76328. McKENZIE v. THE STATE.
76329. AMBLER v. THE STATE.
(371 SE2d 869)

BENHAM, Judge.

Appellants were named in a 35-count indictment as the perpetrators of a series of burglaries and sexual assaults that occurred between June 28 and July 18, 1986, against four women victims residing in Houston County. McKenzie was convicted and sentenced on 23 of the counts with which he was charged, and Ambler was convicted and sentenced on 22 counts. Each has filed a separate appeal.

1. Ambler contends the evidence presented by the State was insufficient to support the guilty verdicts returned against him, and McKenzie claims error in the denial of his motion for a directed verdict of acquittal. Under *Humphrey v. State*, 252 Ga. 525 (1) (314 SE2d 436) (1984), the standard of review when the sufficiency of the evidence is challenged is the same, whether the challenge has as its basis the denial of a motion for directed verdict of acquittal or the denial of a motion for new trial based on insufficient evidence.

The first victim, a 14-year-old, testified that she was blindfolded and awakened in the middle of the night by someone shaking her. She was hit on the face, and two men took turns having sexual intercourse with her against her will. A sharp instrument was held to her throat when she refused to perform acts of sodomy. The victim stated that she was held down on her bed and was not free to leave during the ordeal. Jewelry belonging to the victim's mother was taken. It was determined that the assailants gained entry to the victim's home through a utility room window and the back door, without the victim's permission. In a statement made to police after his arrest, Ambler admitted having had sexual intercourse with the first victim and having taken property from that residence. The physician who examined the victim testified that she had cervical abrasions consistent with a forceful sexual act. The evidence was sufficient to support the jury's conclusion that Ambler was guilty of burglary, rape, aggravated assault, false imprisonment, and theft by taking with regard to the first victim. OCGA §§ 16-7-1; 16-6-1; 16-5-21; 16-5-41; 16-8-2.

The second victim testified that two masked, naked men entered her bedroom in the early morning hours and each had sexual intercourse with her against her will. Her assailants then pulled her into the bathroom, where she was forced to undergo anal intercourse against her will. Her assailants attempted to have her perform an act of oral sodomy, during which her mouth came into contact with the sex organ of one of her assailants. The victim saw a silver blade in the hands of the taller of the two attackers, and it was used to threaten her and her sleeping children, one of whom awakened during the victim's three-hour sexual assault. The victim testified that she suffered

bruises on her elbows and knees from the assault. She stated that one assailant was circumcised and the other was not, and she identified fingerless gloves found in a dresser drawer in McKenzie's home as similar to the gloves worn by one assailant, and blue tennis shoes found at McKenzie's home as similar to the shoes put on by the taller assailant after the attack. She testified that the two men drank her beer, smoked her cigarettes, and took her jewelry, as well as funds she had collected on behalf of a deceased fellow employee. The victim stated that she had not given her assailants permission to enter her home, or to have vaginal, anal, or oral intercourse with her. The examining physician testified that his examination of the victim's anal and vaginal areas resulted in findings consistent with "traumatic sex." Ambler's palm print was lifted from the victim's bathroom. In his statement to police, Ambler admitted that he was present in the victim's home, and that his companion sexually assaulted the victim but that he did not. He admitted that funds collected by the victim on behalf of a deceased co-employee were taken. In his statement, McKenzie admitted having had sexual intercourse with the victim but denied taking anything from the house. A police officer testified that Ambler was circumcised and McKenzie was not. The evidence was sufficient to convict both appellants of burglary, rape, aggravated assault, aggravated sodomy, false imprisonment, kidnapping, theft by taking, armed robbery, and possession of a knife during the commission of a crime. OCGA §§ 16-7-1; 16-6-1; 16-5-21; 16-6-2; 16-5-41; 16-5-40; 16-8-2; 16-8-41; 16-11-106; *Williams v. State*, 178 Ga. App. 581 (344 SE2d 247) (1986). However, the jury was not authorized to return a verdict of guilty of sodomy in Count 12 because that count charged appellants with aggravated sodomy, and the trial court had not instructed the jury on returning a verdict on an included offense. Compare *Moyer v. State*, 164 Ga. App. 629 (298 SE2d 308) (1982). Accordingly, appellants' convictions for sodomy must be stricken.

The third victim testified that two men dressed in shorts and ski masks entered her home without permission between 12:45 and 1:00 a.m. She testified that a ski mask discovered in a dresser drawer in McKenzie's home looked like the masks worn by the intruders, and the blue tennis shoes found at McKenzie's home "definitely" looked like the shoes worn by the taller of the two men. The victim testified that the taller man held a knife during most of her ordeal and, at times, it was placed against her throat. She was pushed by the two men from the hall, where she discovered their presence, to her bedroom, where she was forced to submit to nonconsensual acts of sexual intercourse. She was forced at knife point to disrobe and place her mouth upon the sexual organ of one of her assailants. After two hours, the intruders tied the victim to her bed and left, taking jewelry, a camera, and her car. The car, after sustaining $800 damage,

was returned later that morning. A ring taken from Ambler at the time of his arrest was identified by the victim as looking like her ring, and she identified as her camera one that was found in the dresser drawer in McKenzie's home. The examining physician testified that the victim had ankle and wrist bruises consistent with being bound, and external genitalia redness consistent with recent sexual intercourse. In his statement to police, Ambler stated that two friends in a car picked him up and drove him to the victim's residence, where he took flashlights and juice. Ambler's fingerprints were found on the passenger side of the victim's car. McKenzie denied being present at the victim's home. The jury convicted McKenzie of burglary, rape, aggravated assault, false imprisonment, kidnapping, aggravated sodomy, theft by taking, and possession of a knife during the commission of a crime. Ambler was convicted of burglary and of theft by taking. The evidence was sufficient to support the verdicts rendered by the factfinder. OCGA §§ 16-7-1; 16-6-1; 16-5-21; 16-5-41; 16-5-40; 16-6-2; 16-8-2; 16-11-106.

The fourth and final victim testified that four men, one wearing a stocking mask and three with their shirts pulled over their heads, entered her apartment without her permission. While three of the intruders took turns forcing her to submit to sexual intercourse, the fourth ransacked her home. A wire and a "shiny blade" that resembled a knife were in her assailant's hands, and she was not permitted to leave. A radio, calculator, camera, food, and other small items were taken from her home. She identified as hers a radio recovered from the storage shed at McKenzie's residence. The examining physician described various hematoma suffered by the victim and testified that the results of a pelvic examination were consistent with violent and forced sex. A person also indicted for the crimes committed against the fourth victim testified that he saw McKenzie engage in sexual intercourse with the victim. In his statement, McKenzie admitted having had sexual intercourse with the victim but denied taking any property. In his statement, Ambler admitted that he had been in the victim's apartment and had taken a radio, but denied having engaged in sexual intercourse with the victim. Hairs found in the victim's bed linens and clothing were "microscopically consistent with" McKenzie's head and chest hair, and Ambler's pubic hair. There was sufficient evidence for a rational trier of fact to convict appellants of burglary, rape, aggravated assault, false imprisonment, and theft by taking. OCGA §§ 16-7-1; 16-6-1; 16-5-21; 16-5-41; 16-8-2. However, appellants' convictions for kidnapping the fourth victim must be reversed because there was no evidence of asportation of the victim. OCGA § 16-5-40 (a); *Haynes v. State*, 249 Ga. 119 (288 SE2d 185) (1982).

2. Appellant Ambler urges suppression of his statement to police,

his fingerprints, and his body hair samples on the ground that he was arrested without probable cause.

One of the assailants in the fourth attack identified McKenzie and a man named Mike, whom he believed was staying with McKenzie, as participants in the assault. The victim of the second assault had earlier told police that one of her assailants called the other "Mike." An officer went to McKenzie's home to talk with him, and was told by McKenzie's grandmother that McKenzie and "Mike" were in a rear bedroom. No one was in the room when the officer entered it. The grandmother described McKenzie's and Mike's attire, and the officer left the premises and drove to an area behind the McKenzie home. Within minutes, two males wearing the described clothing came running from the rear of McKenzie's home. The waiting officer arrested both men when they reached him. One was McKenzie and the other was Michael Ambler. We agree with the trial court that appellant Ambler's warrantless arrest was based on probable cause, and it was not error to admit into evidence appellant Ambler's statement, fingerprints, and hair samples.

3. After his arrest, appellant Ambler was taken to the police station for questioning where he made an inculpatory statement. The transcript of the post-arrest interrogation revealed that the two questioning officers told Ambler they "were trying to see if you want to help yourself" and asked him, "Do you want to help yourself? It's up to you." When asked about their remarks, the officers testified at the motion to suppress hearing that they were trying to tell Ambler they wanted him to be truthful and that he was better off being truthful. Appellant Ambler now maintains that the incriminating statement should not have been admitted because it was induced by the hope of a benefit. See OCGA § 24-3-50.

OCGA § 24-3-50 provides that a confession is not admissible unless it was made voluntarily, "without being induced by another by the slightest hope of benefit or remotest fear of injury." "A reward of lighter punishment is generally the 'hope of benefit' to which [OCGA § 24-3-50] refers. [Cit.] 'For an officer to advise an accused that it is always best to tell the truth will not, without more, render a subsequent confession inadmissible under [OCGA § 24-3-50]' [Cits.] Nor will advice from an officer that the suspect will feel better if he tells the truth render a confession inadmissible under [OCGA § 24-3-50]." *Caffo v. State*, 247 Ga. 751, 757 (279 SE2d 678) (1981). See also *Cooper v. State*, 256 Ga. 234 (2) (347 SE2d 553) (1986). Appellant was not told that telling the truth would help him in court. See *Askea v. State*, 153 Ga. App. 849 (3) (267 SE2d 279) (1980).

4. Appellant McKenzie contends his incriminating statement should have been suppressed because the *Miranda* rights were not reread to him before he made the statement and because the state-

ment was induced by hope of benefit, in violation of OCGA § 24-3-50.

It is unquestioned that McKenzie was informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), prior to being questioned, and that 12 minutes into the taped interview, the interrogating officer concluded the interview and turned off the tape recorder. A series of law enforcement officers, one or two at a time, continued to question appellant McKenzie, who made the incriminating statement approximately one hour after the initial questioner announced the interview was concluded. Shortly before McKenzie made the statement at issue, one of the officers told him that "if he talked with us we would make it known to the court . . . the District Attorney and the judge . . ."

The failure of each new interrogator to inform appellant of his *Miranda* rights was not error in view of the continuing nature of the interrogation and the short time span between the giving of the *Miranda* warnings and appellant's statement. *Akers v. State*, 179 Ga. App. 529 (1) (346 SE2d 861) (1986). See also *Jones v. Francis*, 252 Ga. 60 (5) (312 SE2d 300) (1984). Offering to make known a suspect's confession to the district attorney and the trial judge is not an offer of benefit. See *Rounds v. State*, 166 Ga. App. 212 (2) (303 SE2d 543) (1983). The trial court did not err in admitting McKenzie's statement.

5. Appellant Ambler maintains that suppression of his incriminating statement was in order because he had made an equivocal request for counsel prior to making the incriminating statement. See *Hall v. State*, 255 Ga. 267 (1) (336 SE2d 812) (1985).

The tape recording of the police interview was transcribed separately by the police department and the district attorney's office. After reading the *Miranda* rights to Ambler, the detective explained to appellant what he had read. The detective then asked, "Okay, do you want to talk with us at this time without having a lawyer present here?"; and appellant responded, "I can talk to you." The detective then said, "Well if you want to talk to us, I need you to sign right here, all that's saying is that you do want to talk with us right now." Then, according to the police department's transcript, Ambler said, "Not until I get a lawyer. What it saying do I get a lawyer?" The district attorney's transcript reads: "Not until I get a lawyer? What you saying, until I get a lawyer?"; to which, in both transcripts, the detective responded, "No, no, if you want to talk to us right now, then we'll go ahead and talk . . ." Appellant then executed the waiver of rights form. At the suppression hearing, both the questioning detective and another detective who witnessed the discussion testified that they believed appellant was asking whether he could speak to them without the presence of an attorney. The trial court listened to the tape several times and agreed that it was clear from the pitch of appellant's voice that he was asking a question.

"An accused in custody, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless he validly waives his earlier request for the assistance of counsel. [Cit.] This rigid prophylactic rule [cit.] embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. [Cit.] (whether accused 'expressed his desire' for, or 'clearly asserted' his right to the assistance of counsel); [Cit.] (whether accused indicated in any manner and at any stage of the process that he wished to consult with an attorney before speaking). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. [Cits.]" *Hall v. State*, supra.

We agree with the trial court's implicit ruling that appellant had not explicitly, equivocally, or ambiguously invoked his right to counsel and, in fact, executed a waiver of that right upon hearing the detective's explanation that he could talk with police without having an attorney present. It was not error to admit Ambler's statement.

6. One of the detectives involved in this case testified that he followed up on another suspect's identification of appellant McKenzie as a perpetrator of the fourth assault by having the suspect "look at the mug books — rather a dozen photos out of my mug books. He picked . . . Mr. McKenzie . . . out. I didn't have Mr. Ambler's picture in there at that time." McKenzie's attorney immediately sought a mistrial on the ground that the detective's testimony had impermissibly placed McKenzie's character into evidence. McKenzie contends the trial court committed reversible error by denying the motion for mistrial.

Citing *Stanley v. State*, 250 Ga. 3 (295 SE2d 315) (1982), McKenzie maintains that the detective's reference to mug books placed McKenzie's character in evidence, and was harmful error due to the trial court's failure to give curative instructions. In *Stanley*, a case involving the same district attorney presently before us, the Supreme Court held that the testimony taken as a whole, wherein repeated references were made to mug books, and the testifying detective, in response to a question asked by the district attorney, described mug books as "pictures of individuals that we have had previous cases on," placed the defendant's character in evidence because it identified the defendant as having a prior record of a criminal offense or offenses. Id. at 4. However, the Supreme Court held that the immediate action taken by the trial court, ruling out the offensive testimony and instructing the jury to disregard it, rendered the error harmless. McKenzie maintains his conviction must be reversed since his character

was placed in evidence and the trial court took no corrective action.

While it is undisputed that no corrective action was taken, we are of the opinion that McKenzie's character was not placed in issue. The disputed question and answer in *Stanley* concerned a description of a mug book. Mere reference to the mug book was not held to place a defendant's character in issue in *Stanley*; rather, it was the testimony that went beyond mere reference and went into a description of the contents of a mug book that was held to have placed Stanley's character in evidence. Since in the present case the detective made only a passing reference to the mug books and did not describe the contents thereof, McKenzie's character was not impermissibly placed in evidence.

7. Appellants contend the trial court committed reversible error by instructing the jury that the State was not required to prove the guilt of the accused beyond a reasonable doubt. The court reporter submitted a corrected transcript which reflects that the jury was told that the State was not required to prove the guilt of the accused beyond all doubt. Therefore, the error of which appellants complain did not occur.

8. Each appellant contends it was error for the trial court to deny his motion to sever. Abuse of discretion amounting to a denial of due process must be shown before a trial court's decision on a motion to sever in a non-capital felony case will be overturned. *Kennedy v. State*, 177 Ga. App. 543 (2) (340 SE2d 204) (1986). Both defendants were charged in each count of the 35-count indictment. McKenzie maintains that he was convicted of the crimes against the second and third victims solely on evidence of Ambler's participation. However, clothing similar to that worn by one perpetrator and property stolen from the third victim were found in a drawer in McKenzie's home; McKenzie's tennis shoes were identified by both victims in question as having been worn by one of the assailants; and McKenzie admitted having had sexual intercourse with the second victim. It can hardly be said that McKenzie's convictions were without a separate foundation.

McKenzie contends the admission of Ambler's confession was so harmful to him that the trial court should have severed his trial. While a police officer testified concerning the contents of Ambler's confession, reference to other participants was replaced with the phrase "another subject," and the trial court informed the jury that any statement by a defendant was admissible only against the maker. Contrary to McKenzie's assertion, no *Bruton* error occurred. *Fortner v. State*, 248 Ga. 107, 109 (281 SE2d 533) (1981).

In support of his motion to sever, Ambler argues that a witness called to testify against McKenzie implicated Ambler in the rape of the 14-year-old victim. Even if Ambler's assertion is taken as true, he has shown no harm inasmuch as he admitted in his statement to po-

lice that he had engaged in sexual intercourse with the 14-year-old victim and had taken property from her residence, and the victim testified that the intercourse and removal of property were without her consent. The trial court did not err in denying the motions to sever.

9. Appellant McKenzie claims error in the trial court's failure to rule on his motion to reveal the deal the State allegedly had made with one witness.

"The [S]tate is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a 'failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*.' [Cits.]" *Jolley v. State*, 254 Ga. 624 (5) (331 SE2d 516) (1985). Prior to testifying, the witness stated that no arrangement or deal had been made by his attorney and the district attorney in exchange for his testimony, and on cross-examination the witness testified that no deal had been promised him. Even if the failure to rule on the motion is taken as a denial thereof, the action is supported by the evidence and does not constitute a due process violation. Id.

10. After being arrested and questioned by police, appellant McKenzie's shoes were taken from him. A detective agreed to go to McKenzie's home to get another pair of shoes for him. After receiving a pair of shoes from one of McKenzie's relatives, the detective saw a pair of blue canvas tennis shoes located outside the home "on the stoop of the driveway." He seized them and they were subsequently introduced as evidence against McKenzie, who contends the shoes were illegally seized.

"It is the general rule that a warrant is required to search the curtilage, and the yard immediately surrounding one's dwelling is well within the curtilage. [Cits.]" *Phillips v. State*, 167 Ga. App. 260 (1a) (305 SE2d 918) (1983). However, if an item, apparently evidence or contraband, is seized after being inadvertently discovered by an officer who saw it during a valid intrusion upon the property, the item falls within the "plain view" doctrine and may be seized without a warrant. *State v. Lyons*, 167 Ga. App. 747, 748 (307 SE2d 285) (1983). Since two victims had described one of their assailants as having worn blue canvas tennis shoes, the officer recognized the shoes as evidence and seized them as soon as he saw them. The officer was validly on the property, having gone, with appellant McKenzie's agreement, to McKenzie's home to retrieve a pair of shoes McKenzie had arranged with a relative to have ready for the officer. Since all three of the "plain view" criteria were met, the trial court did not err in denying McKenzie's motion to suppress.

11. The State called as a witness a man who was charged in the July 18th attack and was incarcerated with appellant McKenzie. In response to the district attorney's inquiries, the witness stated that

while incarcerated he had asked McKenzie if he and Ambler had ever raped anyone before and that McKenzie had replied that "[Ambler] had told the detectives, that [McKenzie] was with [Ambler] whenever [Ambler] raped a 14-year-old girl." Appellant McKenzie moved for a mistrial on the grounds that, despite his request, he had not been furnished with a copy of this statement made by him while he was in police custody. OCGA § 17-7-210. The trial court denied appellant's motion and instructed the jury to disregard the witness' response concerning statements made to him by appellant while in custody. McKenzie contends it was error to deny his motion for mistrial.

OCGA § 17-7-210 provides that at least 10 days before trial, a requesting defendant is entitled to a copy of any statement given by him while in police custody; that if the defendant's request precedes the discovery of a statement, the evidence shall be produced as soon as possible after its discovery; and that failure of the prosecution to comply with a defendant's request "shall result in such statement being excluded and suppressed from the prosecution's use in its case-in-chief or in rebuttal." OCGA § 17-7-210 (c).

Asserting that he had been apprised of the witness' jailhouse conversation with McKenzie only the evening before the witness testified, the district attorney contended the evidence was newly discovered. The ensuing discussion revealed that the trial had resumed the same evening of the discovery, and that defense counsel had not been made aware of the existence of the statement.

The trial court correctly instructed the jury to disregard the offending portion of the witness' testimony. OCGA § 17-7-210 was applicable since the statement made by McKenzie to the witness was given while appellant was in police custody. *Walraven v. State*, 250 Ga. 401 (2) (297 SE2d 278) (1982). See also *Reed v. State*, 163 Ga. App. 364 (2) (295 SE2d 108) (1982). Denying the motion for mistrial was not error in light of the statute's call for suppression, a goal successfully accomplished by the trial court's curative instructions.

12. Both appellants contend the trial court erred by giving a jury charge on flight. The trial court instructed the jury that should it find flight or attempted flight to have occurred, it could then consider whether or not to draw an inference of guilt from that flight, but that the fact of flight was subject to explanation.

The State based its request for the charge on flight on evidence that appellants ran from the rear of McKenzie's residence and across the backyard when law enforcement officers approached the front of the residence. Contrary to appellant's assertions, the charge was authorized by the evidence (see *Powers v. State*, 168 Ga. App. 642 (5) (310 SE2d 260) (1983)); and was not burden-shifting. *Lingerfelt v. State*, 255 Ga. 180 (5) (336 SE2d 250) (1985).

*Judgments affirmed in part and reversed in part. McMurray,*

*P. J., and Pope, J., concur.*

DECIDED JUNE 23, 1988 —
REHEARINGS DENIED AND DISMISSED JULY 15, 1988 —

*Jeffrey L. Grube*, for appellant (case no. 76328).
*Stephen N. Hollomon*, for appellant (case no. 76329).
*G. Theron Finlayson, District Attorney*, for appellee.