### A98A0429. DAVIS v. THE STATE.
(501 SE2d 241)

POPE, Presiding Judge.

Kevin Charles Davis was charged with felony murder, trafficking in methamphetamine, possession with intent to distribute hydromorphone and morphine, and possession of amphetamine, cocaine, marijuana, and methylphenidate. He was convicted of all charges except felony murder and was sentenced to 30 years' prison time and a $300,000 fine. On appeal he challenges the sufficiency of the evidence supporting his convictions for trafficking in methamphetamine and possessing cocaine; claims his statements and evidence obtained in a search of his apartment should have been suppressed; and challenges his fine as excessive. We affirm the convictions but must vacate the sentence imposed for trafficking in methamphetamine because the fine exceeded that prescribed by the sentencing statute.

1. In two enumerations, Davis contends the statements he gave police, as well as the written consent to search his apartment, were tainted by the trooper's "illegal arrest."[1] In reviewing the denial of this motion to suppress, we construe the record to uphold the trial court's findings and judgment, recalling that the trial court, and not this Court, resolves issues of credibility and conflicting evidence. The trial court's judgment on this matter is to be upheld unless clearly erroneous. *Lee v. State,* 222 Ga. App. 389, 391 (2) (474 SE2d 281) (1996).

The evidence showed that around 1:00 a.m. on March 31, 1996, a ponytailed man wearing jeans and a tie-dyed shirt approached Beverly Morrow, a nurse at Sylvan Grove Hospital, and said a man was hurt and bleeding behind the Emergency Medical Services building next door. The ponytailed man walked away. The nurse called police, who quickly came and found a dead body in a vehicle parked behind the EMS building. As the ponytailed man had disappeared and no one knew what had happened to the dead man, police radioed a

---

[1] The original appellate record in this case contained no written motion to suppress enumerating these grounds. This Court undertook review of the matter only when a telephone conference with the trial court clerk revealed that this motion to suppress was filed in a case bearing a different indictment number. Parties are cautioned to ensure that the record contains the documents and evidence necessary for appellate review. Compare *Turner v. State,* 178 Ga. App. 888 (1) (a) (345 SE2d 99) (1986) (where no written motion to suppress was filed, court would not review enumeration raising denial of that motion).

"lookout" for anyone of that description. A state trooper heard the radio dispatch and saw Davis, who fit the witness's description, walking along the road in the vicinity of the hospital.

The trooper told Davis that police officers wanted to speak to him regarding the man behind the EMS building. Because the trooper had learned that that man was bleeding, he first frisked Davis for weapons. In Davis' front pocket the trooper felt a hard object, which he asked Davis to remove. Davis pulled out a cigarette box, and the trooper patted the area again to ensure no weapons were in Davis' pocket. Concerned that the box could contain a razor blade, needle, or other small weapon, the trooper opened the box, revealing two marijuana cigarettes. The trooper then arrested Davis.[2] Davis later confessed that he had supplied drugs to the dead man and had carried his body to the EMS station when the man passed out due to an apparent overdose. Davis also gave officers consent to search his apartment, in which police found large quantities of drugs and drug-measuring devices. That search resulted in the charges for which Davis was convicted.

The trial court did not err when it found the trooper's actions appropriate. The officer's stop of Davis was justified under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). *Terry* permits officers to undertake "a protective 'pat down' of the outer surface of clothing for weapons if the officer has reasonable apprehension that the person is armed or dangerous, and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop." (Citations and punctuation omitted.) *Clinkscale v. State*, 158 Ga. App. 597, 598 (1) (281 SE2d 341) (1981). Here, the trooper had ample cause to stop and question Davis and, considering the report that the victim was bleeding, had ample cause to believe Davis might be carrying a weapon. See *Wold v. Minnesota*, 430 NW2d 171, 175-176 (Minn. 1988) (detention and weapons frisk of witness to homicide upheld where crime had just occurred, circumstances of crime were not known, and police were attempting to "preserve the integrity of the scene until the true facts could be sorted out"). Construing the record in favor of the trial court's ruling, it appears that when the trooper found the hard object in Davis' pocket he reasonably believed it might be a weapon or contain a weapon, and he did not violate Davis' rights by opening the box. Given the circumstances — a man was "down" and bleeding, and the officer had information that Davis was somehow involved — the officer was not limited to a mere pat-down of Davis' clothing and could take the reasonable steps necessary to ensure Davis was not carrying some sort of weapon, however small. See *Hayes v. State*, 202 Ga. App. 204, 205-206 (414 SE2d

---

[2] Davis was charged with possession of marijuana in a different indictment, and that case was apparently nolle prossed.

321) (1991). Compare *State v. Newton*, 227 Ga. App. 394, 396 (1) (489 SE2d 147) (1997) (upholding trial court's suppression of officer's intrusion into defendant's wallet, where the trial court determined defendant represented no threat to officer). As the arrest was not "illegal," it did not taint the subsequent confessions and consent to search.

2. In several enumerations, Davis contends his several statements to police were erroneously admitted. The transcript reveals that after Davis was arrested, a GBI agent interviewed him at the Jackson police station from approximately 5:00 to 6:00 a.m. Prior to this first interview, Davis, who had three years of college, was read his *Miranda* rights and signed a form stating he had been advised of his rights, was willing to talk about the dead man, and had received neither threats nor promises to induce his statement. During this interview, Davis first claimed he did not know the deceased and "happened" upon his body as he was walking home. He soon changed his story and admitted he knew the dead man, who had come to his apartment to use drugs. The GBI agent then obtained from Davis a signed consent to search the apartment.

Davis went with officers to his apartment, where a search was conducted and a sheriff's investigator again interviewed Davis around 7:30 a.m. Davis showed the investigator the type of drugs he had given the deceased. Before a third interview just after noon, officers reminded Davis that his *Miranda* rights were still in effect, and Davis recounted his involvement with the deceased's drug use. During a fourth interview, conducted the following day, Davis again acknowledged that he had supplied drugs to the deceased.

(a) Davis maintains the trial court should have suppressed his statements to police because he was not adequately advised of his *Miranda* rights. This enumeration is meritless. The record shows Davis was fully informed of his rights at 5:00 a.m. and waived them. He was interviewed for an hour, signed a consent to search his apartment, accompanied investigators there, and continued speaking with them. As the questioning at the apartment was part of a continuing interrogation interrupted only by a short time period and a change in location, officers were not required to remind Davis of the *Miranda* rights. See *Rhodes v. State*, 200 Ga. App. 193, 195 (3) (407 SE2d 442) (1991); *McKenzie v. State*, 187 Ga. App. 840, 844 (4) (371 SE2d 869) (1988). The record clearly shows officers did remind Davis of those rights when they interviewed him at noon the same day, and the record supports the inference that Davis remained aware of his rights during his final interview the next day. The original *Miranda* warnings did not become stale during that time period. See *Moten v. State*, 231 Ga. 642, 643 (203 SE2d 527) (1974).

(b) Davis also contends he made statements invoking his right to counsel, requiring officers to cease interrogating him. During the

interview at the apartment, Davis said, "I don't know if I need a lawyer or not." The investigator replied that if he needed one, that was his decision, but the investigator wanted to continue talking to him. Davis replied, "okay," and questioning continued. Davis' equivocal statement did not require officers to stop questioning him. *Jordan v. State*, 267 Ga. 442, 444 (1) (480 SE2d 18) (1997). Again, during the noon interview, Davis said, "I'd feel a lot safer if I could afford an attorney, but I know that's kinda like out of the question, so. . . ." The investigator then asked if Davis wanted an attorney. Davis replied, "Well, I can't afford one, and a public defender is, they're so overworked all they want to do is make a deal with the state. . . ." After complaining that public defenders were ineffective and that the judicial system was skewed in favor of those with money, Davis continued answering the investigator's questions. These equivocal statements did not require the investigator to stop his interrogation. Id.

(c) Finally, Davis claims his statements were obtained through an improper promise of a lighter sentence or more lenient treatment. During the third interview, the investigator did tell Davis that he would inform the district attorney that Davis confessed and cooperated, but such a statement does not constitute the "hope of benefit" rendering a confession inadmissible. *McKenzie v. State*, 187 Ga. App. at 844.

3. Davis contends that insufficient evidence supports his convictions for trafficking in methamphetamine and possession of crack cocaine. He bases his assertion on statements he made to officers that he was "ripped off" when he purchased the methamphetamine and that he bought the crack intending to buy heroin and did not believe it to be crack because the substance dissolved in water, and "crack is not water soluble." Of course, during that same conversation Davis told the investigator that he had "been trying to find some decent [methamphetamine] for months . . . 'cause I knew a bunch of people who wanted it." Considering the overwhelming evidence showing Davis' intimate familiarity with all kinds of illicit drugs, including crack cocaine and methamphetamine, this enumeration borders on the absurd. See generally *Haire v. State*, 133 Ga. App. 12, 13 (209 SE2d 681) (1974) (jury may infer defendant's knowledge of contraband from circumstances).

4. In his final enumeration, Davis correctly contends that the court exceeded its statutory authority when it assessed against him a $300,000 fine for trafficking in 87.5 grams of methamphetamine. We agree and must vacate that portion of the sentence. OCGA § 16-13-31 (e) (1) specifically provides that one found guilty of trafficking in less than 200 grams of methamphetamine "shall be sentenced to a mandatory minimum term of imprisonment of ten years *and shall pay a fine of $200,000.*" While the mandatory imprisonment term is described as a *minimum*, the amount of the fine is specifically

directed in plain language. Although no cases have addressed this particular issue, in *Recoba v. State*, 179 Ga. App. 31, 34-35 (4) (345 SE2d 81) (1986), this Court recognized that a similar provision in the same statute would result in a mandatory *minimum* prison term and a specified mandatory *fine*. Nothing in *Boatwright v. State*, 193 Ga. App. 141, 143 (4) (387 SE2d 386) (1989), or *Conrad v. State*, 217 Ga. App. 388, 390-391 (3) (457 SE2d 592) (1995), is contrary to this holding. As the fine is mandatory, we vacate that portion of the sentence and remand the matter for resentencing.

*Judgment of conviction affirmed, sentence vacated in part and case remanded for resentencing. Beasley and Ruffin, JJ., concur.*

DECIDED MARCH 31, 1998 —
RECONSIDERATION DENIED MAY 5, 1998.

*Hemmann & Hemmann, Paul E. Hemmann*, for appellant.

*Tommy K. Floyd, District Attorney, Mark S. Daniel, Marie R. Banks, Assistant District Attorneys*, for appellee.