A06A0702. VAUGHAN v. THE STATE.
(631 SE2d 497)

ADAMS, Judge.

Gerald Vaughan was tried on stipulated facts and found guilty of trafficking in methamphetamine and possession of marijuana with intent to distribute. On appeal, he contends the trial court erred by denying his pre-trial motion to suppress. He contends an officer exceeded the scope of a pat-down search executed to determine whether he was in the possession of a weapon.

The facts are largely undisputed. On January 19, 2004, Officer James McDonald of the Snellville Police Department told Gwinnett County Police Officers Hurst and Boone that Vaughan was using and trafficking methamphetamine and advised that he could be violent and armed with guns or knives. Two days later, Hurst stopped Vaughan for an equipment violation because his car windshield was

extensively cracked. Vaughan was alone in the car and appeared nervous as he presented his license. Because of the information he had learned about Vaughan, Hurst called Boone for backup, and Boone arrived and took a position on the passenger side of the car. One or both officers then noticed a machete lying on the passenger floorboard with the handle within Vaughan's reach. The officers asked Vaughan to get out and move to the back of the car, which he did. The machete was left in the car.

Hurst asked Vaughan if he had any weapons, and Vaughan responded, "I have knives." Hurst then searched Vaughan for weapons and held his hands while doing so. Something in a back pocket felt like a knife, and Vaughan said, "There's one in there." Hurst then removed a large folding knife from that pocket and handed it to Boone. Vaughan continued to act nervous, and he began to turn from left to right, which caused Hurst to have to adjust his grip on Vaughan's hands several times. Hurst asked Vaughan if he had any other weapons, and Vaughan said, "There's a knife in my pocket under a tin." Vaughan reached in the pocket and had to remove the tin to get to the knife. The knife was about two or two-and-a-half inches long when folded, and it could have fit inside the tin. Hurst handed the knife and tin to Boone. The tin had velcro taped to it, which was suspicious to the officers because it suggested that the tin could be easily concealed or stored somewhere.

Because he was worried about officer safety and the possibility that Vaughan had even more knives, Hurst then asked Vaughan if there were any weapons in the tin, and Vaughan said, "No, it's my Sucrets tin." Hurst asked, "Do you mind if we open it?" Vaughan replied, "I wish you wouldn't." Boone then opened the tin because of a concern that there might be weapons inside it, specifically, a knife. Inside were several baggies of a white crystal substance that was later determined to be methamphetamine. Vaughan was then arrested and his car searched.

The trial court held that the cracked windshield gave the officers a valid basis for the stop; that the machete gave them a valid basis to ask Vaughan to step out of the car and to question and search Vaughan for weapons; that the officers were suspicious of Vaughan because of his demeanor inside and outside the car and because of the multiple weapons; that the officers were concerned and articulated a reasonable suspicion that Vaughan might have another knife in the tin; and that therefore the officers were authorized to look in the tin for their own safety.

A trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed in favor of the trial court's findings

and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Jackson v. State*, 258 Ga. App. 806, 807-808 (2) (575 SE2d 713) (2002). The trial court's decision is to be upheld unless clearly erroneous. *Davis v. State*, 232 Ga. App. 450 (1) (501 SE2d 241) (1998).

Vaughan contends only that the officers exceeded the scope of a lawful search by taking the tin and opening it without justification. He asserts that he fully cooperated and was truthful with the police regarding the weapons that he did have. He argues that other than his admitted possession of the two knives, the police offered no specific and articulable reason to believe that he possessed a third knife concealed in the tin and that nothing about the tin itself suggested it might be a weapon. He adds that once the police secured the tin, they had protected themselves from any possible weapon contained therein and therefore had no reason to open it.

But this Court has held that during a valid pat-down search, where an officer reasonably suspects that a box discovered on the person contains a weapon, he or she is authorized to open the box. *Davis*, 232 Ga. App. at 451 (1). In *Davis*, the police were on the lookout for a ponytailed man who had reported a hurt and bleeding man behind a hospital building. A subsequent investigation revealed a dead man sitting in a car at the reported location. Id. at 450-451 (1). When a trooper found Davis, who fit the description, the trooper frisked him for weapons and found a hard object, which he asked Davis to remove, and which turned out to be a cigarette box. Id. at 451. "Concerned that the box could contain a razor blade, needle, or other small weapon, the trooper opened the box, revealing two marijuana cigarettes." Id. This Court found that the officer had proceeded reasonably. Id. Given that Davis may have been involved with the death of a man who had reportedly been bleeding before his death, "the officer was not limited to a mere pat-down of Davis' clothing and could take the reasonable steps necessary to ensure Davis was not carrying some sort of weapon, however small." Id.

The same is true here. The officers had some knowledge that Vaughan was armed and considered dangerous. And they learned that he had a machete and two pocket knives on his person, and that one of them was small enough to fit in the tin. Furthermore, although not resisting the search, Vaughan was nervous and moving around during the search, which raised the officers' concerns about possible weapons. Under these facts it was reasonable to conclude that Vaughan might have another knife, despite his assurances that he did not, and that one could be in the tin.

The cases upon which Vaughan relies are distinguishable. In *Cartwright v. State*, 265 Ga. App. 520, 521 (594 SE2d 723) (2004), the officer specifically testified that she opened a box found on the defendant during a weapons pat-down search because she suspected

that it might conceal marijuana or other drugs. "[T]he officer did not present any evidence or testimony that she believed the wooden box contained a weapon or a part of a weapon." Id. at 522.

In *State v. Jourdan*, 264 Ga. App. 118, 119 (589 SE2d 682) (2003), during the course of investigating possible drug use by hunters, Department of Natural Resources rangers found the defendant in a deer stand and asked him to come down. The rangers asked if he had any weapons on his person, and the defendant consented to a search for weapons. Id. After finding no weapons, the rangers asked the defendant to remove his coveralls, and after additional searching, they discovered a cigarette box in the defendant's shirt pocket. Id. One ranger opened the box and discovered contraband. Id. The trial court held that the search of the defendant's outer clothing was authorized under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), and that the defendant consented to the search of his interior clothes. Id. at 120. But the court held that searching the contents of the cigarette box was "improper and invalid" because there was nothing about the box itself that made the ranger think the box contained a weapon. Id.

This Court affirmed and held that although the ranger testified that the box could have contained a weapon, he exceeded the scope of a weapons search because he was only authorized to seize the box if it felt like a weapon. *Jourdan*, 264 Ga. App. at 122-123. In doing so, this Court specifically held, among other things, that there was no evidence showing the ranger reasonably believed the defendant was armed. Id. In the present case, Vaughan was armed, and the officers were not required to believe Vaughan's claim that there were no weapons in the tin. "[W]e certainly know of no constitutional provision which would require that the officer stake his life on appellant's explanation rather than upon the officer's own determination of whether appellant was armed." *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991).

Finally, Vaughan argues that once the officers had possession of the tin, it was secure for purposes of a weapons pat-down, citing *Cartwright*, 265 Ga. App. at 521 ("[T]he removal of the box rendered it secure for purposes of a weapons pat-down."). But we do not "require that police officers, faced with having to make quick determinations about self-protection and the defense of innocent citizens in the area, must also decide instantaneously what less intrusive alternative exists to ensure that any threat presented by the suspect will be neutralized." (Citations and punctuation omitted.) *Hayes*, 202 Ga. App. at 207.

Given the totality of the circumstances presented by the testimony in this case, we cannot say the trial court clearly erred by denying Vaughan's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MAY 18, 2006.

*David L. Whitman*, for appellant.
*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.