A08A0382. SHOEMAKER v. THE STATE.
(663 SE2d 423)

RUFFIN, Presiding Judge.

A jury found Justin Shoemaker guilty of possessing methamphetamine, trafficking in methamphetamine, and possessing a firearm during the commission of a felony. Shoemaker appeals, arguing that the trial court erred in denying his motion to suppress and that there was insufficient evidence to convict him of possessing methamphetamine. For reasons that follow, we affirm.

---

1. Shoemaker claims that the trial court erred in denying his motion to suppress. "When reviewing a ruling on a motion to suppress, we view the evidence in a light favorable to the trial court's conclusions, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous."[1] So viewed, the record shows that at approximately 12:40 a.m. on November 9, 2005, Officer Kaye of the Henry County Police Department responded to a suspicious vehicle call. A vehicle was parked in the driveway of a subdivision's unoccupied model home; Officer Kaye ran the vehicle's tag and learned that it was registered to a different vehicle. In the vehicle's front seat, Officer Kaye saw a scanner, a camouflage mask, a digital scale, and a cell phone. Officer Kaye left the scene; when she returned at approximately 3:00 a.m., she saw Shoemaker walk up and enter the vehicle.

Officer Kaye asked Shoemaker to exit the vehicle and requested his driver's license. She saw a "very large . . . glass smoking device," or "bong," in the vehicle, which had not been there before. When she asked him about the object, Shoemaker stated that it was a bong. Because Shoemaker was sweating, jumpy, very nervous, stuttering, and had red eyes, Officer Kaye suspected that he might be under the influence of a controlled substance. She asked Shoemaker if he was high, and he replied, "Yes, I'm high." She noticed that the front pockets of Shoemaker's pants were "extra bulgy," and accordingly told him that she was going to pat him down to make sure he did not have a weapon. When she patted Shoemaker down, she felt something hard, "like a case," in one of his pockets. Thinking it might be a weapon, Officer Kaye pulled the item out of Shoemaker's pocket. It was a camera case, "like a 35 millimeter camera size," which she believed might contain a weapon. Upon opening the case, Officer Kaye found a scale and several small plastic bags containing what appeared to be crystal methamphetamine. Shoemaker was placed under arrest, and a subsequent search of his vehicle yielded, among other items, two guns and ammunition.

Shoemaker was released from custody later that day. On November 15, 2005, police served an arrest warrant on Shoemaker at his residence. Officers found Shoemaker, a woman, and a small child in an upstairs bedroom. On the bedside table were several small plastic bags containing what appeared to be crystal methamphetamine. At that time, Shoemaker spontaneously told officers that all the drugs were his and that the woman, Diana Rothacker, had nothing to do with them. Shoemaker moved to suppress all evidence seized on both November 9, 2005 and November 15, 2005, as well as a statement he

---

[1] (Punctuation omitted.) *State v. Fulghum*, 288 Ga. App. 746 (655 SE2d 321) (2007).

gave at the jail on November 9 and his admission of ownership of the drugs on November 15. The trial court granted Shoemaker's motion to suppress as to the statement made at the jail and denied his motion to suppress as to his November 15 admission and the drugs and other evidence.

Shoemaker contends the trial court should have granted his motion to suppress evidence found on him, in his vehicle, and at his residence because he was improperly searched by Officer Kaye. We disagree. There are three tiers of police-citizen encounters in Georgia: "police-citizen communications involving no coercion or detention; brief seizures that must be supported by reasonable suspicion; and arrests that must be supported by probable cause."[2] There was sufficient evidence for the trial court to conclude that Officer Kaye's initial contact with Shoemaker was a valid second-tier encounter, as she already knew that the vehicle had an incorrect tag.[3] And there was evidence to support Officer Kaye's continuation of the detention once she saw the bong, suspected that Shoemaker was under the influence, and Shoemaker admitted that he was high.[4]

As part of a valid second-tier encounter, Officer Kaye was authorized to conduct a pat-down search of Shoemaker for weapons.[5] Under *Terry v. Ohio*,[6] an officer conducting a pat-down search may only remove an item from a suspect's clothing if she feels a weapon or an object immediately identifiable as contraband. Here, Officer Kaye felt something hard, "like a case," which was relatively large, and testified that she believed it might contain a weapon. In analyzing

> an intrusive search of a suspect by a police officer to investigate or eliminate a threat to his or her safety, the issue is whether, balancing the officer's need to search against the intrusion of personal security which the search entails, the officer's actions were reasonable under the circumstances.[7]

In these circumstances, where Shoemaker clearly had a large object in his pocket, and the trial court had the opportunity to observe the actual size and contours of the object, we will not gainsay its

---

[2] (Punctuation omitted.) *Keller v. State*, 286 Ga. App. 292, 296 (3) (648 SE2d 714) (2007).

[3] See *Thompson v. State*, 289 Ga. App. 661, 662 (658 SE2d 122) (2008); *Dawson v. State*, 271 Ga. App. 217, 220-221 (2) (a) (609 SE2d 158) (2005).

[4] See *Keller*, supra.

[5] See *Chapman v. State*, 279 Ga. App. 200, 203 (1) (630 SE2d 810) (2006).

[6] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[7] (Punctuation omitted.) *Satterfield v. State*, 251 Ga. App. 141, 144 (553 SE2d 820) (2001).

determination that Officer Kaye's suspicion that it contained a weapon was reasonable.[8] And where, as here, the officer testified that Shoemaker was very nervous and jumpy and that she suspected the case might contain a weapon, and the case was large enough to do so, we cannot say the trial court erred in its determination that Officer Kaye was authorized to open the case.[9] Moreover, because the initial search was lawful, there is no basis to suppress the evidence seized on November 15 as "fruit of the poisonous tree."[10] Accordingly, we affirm the trial court's denial of Shoemaker's motion to suppress.[11]

2. Shoemaker argues that the evidence was insufficient to convict him of possession of methamphetamine for the drugs found on the bedside table at his residence on November 15 because both he and Rothacker had equal access to the drugs. In evaluating the sufficiency of the evidence after a criminal conviction, we view the evidence in a light most favorable to the jury's verdict and do not weigh the evidence or evaluate witness credibility.[12] Pursuant to the equal access rule,

> merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity.[13]

A connection between the defendant and the contraband may be inferred, however, from the defendant's conduct before and after the offense.[14] Here, there was evidence that Shoemaker affirmatively stated to police officers that the methamphetamine was his and not Rothacker's. Shoemaker himself testified at trial that he had previously been convicted of possession of methamphetamine and that he had used methamphetamine in the house. Thus, there was sufficient

---

[8] See *Mohamed v. State*, 276 Ga. 706, 710 (2) (583 SE2d 9) (2003); compare *Mason v. State*, 285 Ga. App. 596, 598 (647 SE2d 308) (2007) (search exceeded permissible scope of weapons pat-down when officer opened matchbox); *Castleberry v. State*, 275 Ga. App. 37, 40 (3) (619 SE2d 747) (2005) (physical precedent only) (officer conducting pat-down search not authorized to reach in defendant's pocket when he felt round, hard object, like a stick or pencil, but could not identify it as a weapon).

[9] See *Vaughan v. State*, 279 Ga. App. 485, 488 (631 SE2d 497) (2006); *Davis v. State*, 232 Ga. App. 450, 451-452 (1) (501 SE2d 241) (1998).

[10] See *Mitchell v. State*, 289 Ga. App. 55, 59 (1) (656 SE2d 145) (2007).

[11] See *Keller*, supra at 297.

[12] See *Gentry v. State*, 281 Ga. App. 315, 319 (2) (635 SE2d 782) (2006).

[13] *Giang v. State*, 285 Ga. App. 491, 492-493 (2) (646 SE2d 710) (2007).

[14] See *McWhorter v. State*, 275 Ga. App. 624, 628 (1) (b) (621 SE2d 571) (2005).

evidence for the jury to conclude that Shoemaker was in possession of the methamphetamine.[15]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED JUNE 19, 2008.

*Joseph S. Key*, for appellant.
*Tommy K. Floyd, District Attorney*, for appellee.