**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**August 6, 2012**

# In the Court of Appeals of Georgia

A12A1118. LEWIS v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion to suppress, Christopher Maurice Lewis was convicted of possession of cocaine with intent to distribute and obstruction of a law enforcement officer in a stipulated bench trial. On appeal from the judgment of conviction, Lewis contends that the trial court erred in denying his motion to suppress because narcotics investigators improperly restrained him without a sufficient basis for believing that he had drug contraband on his person. Consequently, Lewis maintains that the drugs that the investigators seized from him were fruit of the poisonous tree and should have been suppressed. We disagree and affirm.

In reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility

of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. However, when evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Punctuation and footnotes omitted.) *Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

Viewed in the light most favorable to the trial court's ruling, the evidence showed that Richmond County narcotics investigators were patrolling a known drug area when they noticed Lewis walking down the middle of the street with his back to them. Lewis turned around, saw the investigators, and continued to proceed down the street. As the investigators got closer to Lewis in their patrol car, he again turned around and looked at them. Lewis then reached into his left jacket pocket, retrieved a small clear plastic bag, and placed the bag in his mouth as he continued to walk away from the investigators.

Once Lewis placed the baggy in his mouth, one of the investigators exited from the patrol car and approached Lewis to conduct a field interview. Lewis refused to answer any of the investigator's questions, keeping his eyes averted and his mouth

2

tightly closed. As the investigator continued to ask questions, Lewis began chewing on the baggy.

The investigator placed him in a neck restraint to prevent him from destroying what the investigator believed was evidence of illegal narcotics. According to the investigator, the restraint maneuver was not a choke hold; rather, the maneuver involved placing his arm near Lewis's jaw line to prevent him from chewing or swallowing what was in his mouth. Lewis began to struggle with the investigator in an effort to break free, and the investigator told him to stop struggling and spit out what was in his mouth. During the struggle, the second investigator realized that Lewis had a razor blade in his left hand, and he approached Lewis and restrained his left arm. After ultimately subduing Lewis, the investigators were able to recover a clear plastic bag containing 2.0 grams of crack cocaine from his mouth.

At the hearing on the motion to suppress, the investigator who had attempted to conduct the field interview of Lewis testified to the events as set above. The investigator noted that he approached Lewis to conduct a field interview only after observing him remove the clear plastic baggy from his pocket and place it in his mouth. According to the investigator, his experience in the narcotics unit led him to believe that Lewis's act of placing a plastic baggy in his mouth was "indicative of .

3

. . someone possibly in possession of illegal narcotics or attempting to conceal or destroy evidence." The investigator also explained that he used the neck restraint once Lewis started chewing the baggy because, in his experience, that type of behavior was "typical of . . . people try[ing] to conceal narcotics."

After hearing the investigator's testimony, the trial court denied Lewis's motion to suppress the crack cocaine seized from his person. The case proceeded to a bench trial on stipulated facts, and the trial court found Lewis guilty of possession of cocaine with intent to distribute and obstruction of a law enforcement officer. This appeal followed in which Lewis challenges the denial of his motion to suppress.

> United States Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

(Citation omitted.) *Walker v. State*, 314 Ga. App. 67, 69-70 (1) (722 SE2d 887) (2012).

At the hearing on his motion to suppress, Lewis conceded that the investigator's attempt to field interview him was a first-tier detention,[1] but he argued that the investigator escalated the encounter by placing him in the neck restraint and ordering him to spit out what was in his mouth. In denying the motion to suppress, the trial court treated the investigator's actions as escalating the encounter to a second-tier detention and found that the investigator had reasonable suspicion to support his actions.

The trial court erred in finding that the investigator only escalated the encounter to a second-tier detention by using the neck restraint maneuver and ordering Lewis to spit out what was in his mouth. As part of a valid second-tier detention, an officer is authorized to conduct a pat-down of a suspect's outer clothing for weapons, if there are particular facts from which he can reasonably infer that the suspect is armed and dangerous. See *Jones v. State*, 314 Ga. App. 247, 251 (2) (723 SE2d 697) (2012); *Shoemaker v. State*, 292 Ga. App. 97, 99 (1) (663 SE2d 423) (2008). But a more intrusive search of a person escalates the encounter and requires

_____

[1] To the extent that Lewis argues in his appellate brief that the investigator's initial encounter with him constituted a second-tier detention, his argument will not be considered because it was not raised during argument on the motion to suppress below. See *Locher v. State*, 293 Ga. App. 67, 68-69 (1) (666 SE2d 468) (2008).

a showing of probable cause. See *Lindsey v. State*, 282 Ga. App. 644, 649 (639 SE2d 584) (2006); *Barraco v. State*, 244 Ga. App. 849, 851 (2) (a) (537 SE2d 114) (2000). See also *Florida v. Royer*, 460 U. S. 491, 499 (II) (103 SC 1319, 75 LE2d 229) (1983) ("Detentions may be 'investigative' yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person . . . .").

By placing Lewis in a neck restraint and ordering him to spit out the baggy, the investigator escalated the encounter to a third-tier detention requiring a showing of probable cause. See *Merriweather v. State*, 228 Ga. App. 246, 247 (1) (491 SE2d 467) (1997) (treating search of suspect's mouth as a third-tier detention requiring a showing of probable cause). The trial court thus erred in treating the encounter as a second-tier detention requiring only a showing of reasonable suspicion. Nevertheless, "even if the trial court's asserted ground for denying a motion to suppress . . . is erroneous, we will affirm the ruling if it is 'right for any reason.'" (Citations omitted.) *Walker*, 314 Ga. App. at 67 (1). That is the situation here, because the uncontroverted record shows that investigator had the requisite probable cause to support his actions.

6

"Probable cause exists when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent person to believe that a crime has been committed and that the person or property to be searched possesses or contains material which offends the law." *Barraco*, 244 Ga. App. at 851 (2), n. 2. "Probable cause is a commonsense, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," and the test requires merely a probability, not a certainty, of criminal misconduct. *Higdon v. State*, 261 Ga. App. 729, 733 (a) (583 SE2d 556) (2003). See *Barraco*, 244 Ga. App. at 851-852 (2), n. 2. Furthermore, probable cause is measured by examining the totality of the circumstances, and those circumstances include the inferences drawn by an officer based on his own experience. *Higdon*, 261 Ga. App. at 733-734 (a).

In the present case, the narcotics investigator observed Lewis make a series of furtive attempts at concealing the clear plastic baggy – which the investigator, based on his experience, believed contained drug contraband – from placing the baggy in his mouth to attempting to chew it up while the investigator sought to question him.

> Observation of what reasonably appear to be furtive gestures is a factor which may properly be taken into account in determining whether probable cause exists. Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present.

(Punctuation omitted.) *Brown v. State*, 269 Ga. 830, 832 (2) (504 SE2d 443) (1998), quoting 2 Wayne R. LaFave, Search and Seizure (3rd ed.), § 3.6 (d), pp. 318-319. This case fits squarely into the scenario outlined in *Brown*, and, therefore, we conclude that the investigator had probable cause to restrain Lewis and order him to spit out the baggy. See *Merriweather*, 228 Ga. App. at 247 (2) (probable cause existed to search defendant's mouth, where at an intersection known for drug activity, officer saw defendant place paper towel in his mouth while turning away from a stopped vehicle; officer stopped suspect to ask him what was in his mouth; defendant made no reply and then began chewing on what was in his mouth; and officer testified that, in his experience, "drug dealers often operate in the manner he observed defendant operating").

Additionally, we point out that the neck restraint used by the investigator in an effort to have Lewis spit out the baggy of suspected drugs was not unreasonable under the Fourth Amendment. In *Sanders v. State*, 247 Ga. App. 170, 172 (543 SE2d 452) (2000), in which the police officer applied pressure to the suspect's jaw line to force him to spit out a small plastic baggy, we stated that "[a] criminal suspect does not have a right to destroy evidence[,]and the police are authorized to use reasonable but not excessive force in preventing the destruction or concealment of evidence." (Footnote omitted.) We discussed other cases involving similar facts, noting that

> [i]n *Merriweather* [, 228 Ga. App. at 248 (3),] this Court sanctioned the use of the Heimlich maneuver to remove suspected contraband after the defendant swallowed it. In *Beck v. State*, [216 Ga. App. 532, 534-536 (1) (455 SE2d 110) (1995),] the police officer sprayed a chemical irritant into the suspect's eyes when he refused to spit a bag out of his mouth. This Court did not find unreasonable the use of the spray or the subsequent order, after Beck swallowed the bag, that he provide a urine sample and have his stomach pumped.

(Footnotes omitted.) *Sanders*, 247 Ga. App. at 172. We reasoned that applying force to the suspect's jaw line was not unreasonable, given that the use of the Heimlich maneuver in *Merriweather* and the stomach pump in *Beck*, where the suspects actually swallowed the contraband, was not considered to be unreasonable. Id.

9

Consequently, in light of *Sanders* and the other precedent discussed in that opinion, the investigator's application of a neck restraint maneuver was reasonable under the circumstances.

For these combined reasons, while the trial court's asserted ground for denying Lewis's motion to suppress was erroneous, the court's ultimate conclusion that the investigator acted in a manner consistent with the Fourth Amendment was correct. We therefore affirm the trial court's order denying Lewis's motion to suppress the drugs seized from his person.

*Judgment affirmed. Adams and McFadden, JJ., concur.*