## A01A2130. DIXON v. THE STATE.
### (556 SE2d 480)

MIKELL, Judge.

A jury convicted Willie Dixon of two violations of the Georgia Controlled Substances Act: sale of cocaine, OCGA § 16-13-30, and distribution of cocaine within 1,000 feet of a public housing project, OCGA § 16-13-32.5. The trial court denied his motion for new trial. Dixon appeals, contending that there was insufficient evidence to support his conviction, that the court erred in refusing to give a requested jury charge and in admitting an alleged statement by Dixon not disclosed prior to trial, and that the indictment was defective. We disagree and affirm the conviction.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

So viewed, the evidence shows that on June 22, 2000, Officers Tony Pyle and Jay Marquez of the Calhoun Police Department conducted an undercover investigation. The officers engaged a confidential informant, Matthew Lane, to make an undercover drug purchase. They met Lane at the department's drug task force office, where Pyle conducted a routine pre-transaction search of Lane's person, equipped him with a recording device and transmitter,[1] and discussed the investigation with him.

From the drug task force office, Marquez drove Lane to the intersection of Oothacalooga Street and Powell Street. Pyle traveled separately to the same location in a van. Lane informed Marquez that he recognized a potential drug dealer on the porch of a house on Powell Street. The man was later identified by Lane as Dixon. Marquez gave Lane $20 with which to purchase drugs. Lane approached the man while Marquez remained in the car parked in front of the house. The officer observed Lane and the man talking for several minutes.

Lane returned to the vehicle and informed Marquez that he had arranged to make a purchase in approximately five minutes. They drove around the immediate area to wait for the transaction to take place. During that time, Lane told Marquez that the man with whom

---

[1] The police attempted to record the transaction between the informant and the defendant; however, the sound quality of the recording was poor due to interference from overhead power lines. Thus, the recording was unusable and was not introduced at trial.

he spoke was Dixon. They soon encountered Dixon, who told Lane to exit the car and instructed Marquez to drive down the street. Marquez testified that he drove forward at a very slow speed while he watched the transaction in the rearview mirror. He observed Dixon place something in Lane's hand. When Lane returned to the vehicle, he gave Marquez a "white rock substance" that appeared to be crack cocaine. Marquez and Lane then returned to the drug task force office.

Pyle, who witnessed the transaction from the van, also returned to the office. He took possession of the suspected cocaine from Marquez and subsequently transported it to the crime lab. Cindy Simpson, a forensic chemist employed by the Georgia Bureau of Investigation, testified that the substance tested positive for the presence of cocaine.

Dixon was arrested approximately one month later. On September 14, 2000, Lane was arrested on a DUI charge and was placed in the Gordon County jail. Lane testified that he saw Dixon in a holding cell across from his, and that Dixon pointed at him and said that Lane was the one "that busted him." Lane was not working for the police as an informant at that time.

At trial, Pyle, Marquez, and Lane positively identified Dixon as the person from whom Lane purchased the crack cocaine. Marquez testified that he had three opportunities to observe Dixon: while he was sitting in the car during Lane's first contact with Dixon; again when he and Lane saw Dixon walking down the street; and in the rearview mirror when Dixon sold Lane the crack cocaine. Marquez described Dixon's appearance in detail. Pyle testified that he recognized Dixon as the man who sold Lane the drugs, and that he knew Dixon prior to the events in question. Pyle further testified that the transaction took place within 1,000 feet of a public housing project, and he identified photographs of the area. The jury convicted Dixon of selling cocaine and of distributing cocaine within 1,000 feet of a public housing project.

1. First, Dixon argues that the evidence was insufficient to support his conviction. We disagree.

OCGA § 16-13-30 (b) provides that "it is unlawful for any person to . . . deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." OCGA § 16-13-32.5 (b) prohibits the distribution of a controlled substance "within 1,000 feet of any real property of any publicly owned or publicly operated housing project." Cocaine is a controlled substance. OCGA § 16-13-26 (1) (D). We conclude that the evidence summarized above was sufficient for a rational trier of fact to find Dixon guilty of both offenses beyond a reasonable doubt. *Williams*, supra.

Dixon's arguments to the contrary are without merit. He argues

that the verdict was contrary to the evidence, because he presented two witnesses who testified that he did not own clothing that matched the description of what the state's witnesses said he was wearing. Dixon also argues that the police officers' testimony was not credible, and that Pyle should have taken photographs of the transaction between Lane and Dixon. Finally, Dixon reiterates the allegation he made at trial that the officers confused him with another person.

It is well settled that "[w]itness credibility is to be determined by the jury." (Citations and punctuation omitted.) *Holmes v. State*, 273 Ga. 644, 645 (1) (543 SE2d 688) (2001). "Conflicts in the testimony of the witnesses . . . are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld." *Ringo v. State*, 236 Ga. App. 38, 39 (510 SE2d 893) (1999). Accordingly, because there was ample evidence to support the jury's verdict, we affirm Dixon's conviction.

2. Next, Dixon contends that the court erred by refusing to give the following requested jury charge: "I charge you that mere knowledge of a crime is not sufficient to show that a defendant is a party to the crime." Our review of the transcript reveals that the trial court gave that precise charge. Accordingly, there was no error.

3. Dixon assigns error to the court's admission of his statement in jail that Lane was the one "that busted him." Dixon acknowledges that the prosecutor did not know about the statement until he interviewed Lane for the first time after the trial had begun; however, Dixon argues that the state's failure to disclose the statement before calling Lane as a witness renders it inadmissible. We disagree.

The trial transcript shows that the prosecutor learned of the statement "fifteen or twenty minutes" before bringing it to the court's and defense counsel's attention. The trial court ruled that Dixon's statement was admissible, because it was not the product of police interrogation and because it was previously unknown to the state.

We conclude that the trial court did not abuse its discretion in admitting Dixon's statement. OCGA § 17-16-4 (a) (1) requires the state to disclose any "relevant . . . oral statement made by the defendant while in custody, whether or not in response to interrogation," no later than ten days prior to trial. OCGA § 17-16-6 provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may . . . upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed . . . or

may enter such other order as it deems just under the circumstances.

In this case, Dixon failed to demonstrate that the state acted in bad faith in failing to comply with OCGA § 17-16-4 (a) (1). Therefore, the court did not err in refusing to exclude the newly discovered evidence. *Bell v. State*, 224 Ga. App. 191, 192 (480 SE2d 241) (1997) (court did not have authority to exclude defendant's incriminating statement to police officer because the defendant failed to show bad faith or prejudice). Furthermore, in *Broomall v. State*, 260 Ga. 220, 222 (2) (391 SE2d 918) (1990), the Supreme Court held that a trial court did not err in admitting an incriminating statement made to an insurance agent while the defendant was in custody, because the evidence was "newly discovered and was revealed as soon as practicable after its discovery."

The case sub judice is distinguishable from our decision in *Marshall v. State*, 230 Ga. App. 116 (495 SE2d 585) (1998). In *Marshall*, we held that a trial court erred in allowing the admission of an incriminating in-custody statement the defendant made to the detention technician who fingerprinted him. Despite the fact that the technician informed the prosecutor of the statement only ten minutes before the state sought to introduce it, we concluded that it was not newly discovered because evidence garnered by any law enforcement agency is deemed to be in the prosecution's possession from the time it is communicated. Id. at 118 (2). In the case sub judice, however, Dixon's statement was not made to a law enforcement officer; rather, it was made in the presence of another inmate who coincidentally happened to be the confidential informant involved in the investigation of Dixon. Furthermore, in *Marshall* the incriminating statement "provided the only direct evidence of [the defendant's] guilt." Id. at 119 (2). Here, there was substantial evidence of Dixon's guilt in the absence of his statement that Lane "busted him." Accordingly, the trial court did not err in admitting evidence of Dixon's statement.

4. Finally, Dixon argues that his indictment was defective because it failed to allege the county in which the offense was committed. This argument is without merit.

The indictment states the county of the offense, Gordon County, at the top of the document. In *Thomas v. State of Ga.*, 71 Ga. 44 (1883), the Supreme Court held that when an indictment began "State of Georgia, Campbell county," and no other county was mentioned, a subsequent allegation in the indictment that the crime was committed in "the county aforesaid" sufficiently stated the venue. Similarly, the indictment in this case states that the offenses were committed in "the County aforesaid," clearly referring to Gordon County. Thus the indictment was not defective.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED NOVEMBER 9, 2001.

Rodney L. Mathis, for appellant.

T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney, for appellee.