A03A0646, A03A0647. CHRISTOPHER v. THE STATE (two cases).
(585 SE2d 107)

MIKELL, Judge.

In these related cases, Richard Christopher and his wife, Vickie, were convicted of trafficking in methamphetamine and possession of cocaine. Vickie was also convicted of two counts of sale of methamphetamine. They appeal their convictions, and we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendants] no longer enjoy[ ] a presumption of innocence."[1] Further, "[w]e do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

So viewed, the evidence shows that Gwinnett County Drug Task Force Investigator Anthony Lockard learned from a confidential informant ("CI") that Richard and Vickie Christopher were selling methamphetamine in the Lawrenceville area. Investigator Lockard asked the CI to contact the Christophers to arrange a drug sale. With the assistance of the CI, Investigator Lockard's trainee, City of

---

[24] See id.
[1] (Citations, punctuation and footnotes omitted.) *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001).
[2] (Citations omitted.) *Dixon v. State*, 252 Ga. App. 385 (556 SE2d 480) (2001).

Snellville police officer Erin Thompson, an undercover officer with the task force, made two methamphetamine purchases from Vickie Christopher. The first sale occurred at a gas station on May 4, 1999, where Officer Thompson paid Vickie $250 for an eighth of an ounce, and the second took place at Vickie's residence on May 7, 1999, where Officer Thompson paid her $750 for a half an ounce.[3] After each sale, Officer Thompson gave Investigator Lockard the drugs and he placed them into the evidence locker. At trial, the state's expert witness confirmed the amounts purchased as an eighth of an ounce and a half an ounce and testified that both substances were positive for methamphetamine, a Schedule II controlled substance.

After the second purchase, the officers obtained a "knock and announce" search warrant for the Christophers' residence. Investigator Lockard testified that they executed the warrant on May 12, 1999, at approximately 9:00 p.m. and encountered the defendants and. Vickie's son in the living room. All three occupants were detained, patted down for weapons, and instructed to sit on the couch. Under the bed in the master bedroom, the officers found a safe, which contained one big baggie and nine little baggies of methamphetamine, an electronic scale, numerous small baggies and ties, and razor blades. A Georgia Bureau of Investigation forensic chemist testified that she tested 56.2 grams from the substance found in the safe and that it was positive for methamphetamine.

The officers also located a powdery substance on the top of the dresser, in a baggie in a jewelry box, and in a baggie in the dresser. The GBI chemist identified that substance as a total of 1.4 grams of cocaine. Investigator Lockard testified that he also found numerous ledgers, notes, and notebooks, which he opined indicated drug trade. One of the notebooks contained several notes, two of which stated, "Richard, these people will be by at these approximate times for these quantities" and "I'm at the laundromat washing the comforter and I'll be home asap. I gave Joe his third of profits, $517 and we owe him $465, he said that's fine. He also said if you need money call him. The stuff is in the safe. I sold a quarter of it! This money is half of what was left after I paid Joe. I'll see you soon, love Vickie." Investigator Lockard also recovered $770 from the safe and $287 from Vickie's wallet.

Richard gave a statement at the scene, which was videotaped. He admitted that the substance in the safe was methamphetamine

---

[3] Officer Thompson was posing as the girlfriend of a man to whom the CI owed quite a bit of money. According to Vickie, the CI told her that he needed her to help him find the drugs to sell to this man or the CI would be hurt. Richard was not present at either sale. Thus, he was not charged in connection with them.

and that the substance found on the dresser was cocaine. He also stated that he placed the methamphetamine in the safe.

Vickie testified that she and Richard started selling drugs about three months before their arrest and that during that time, she made about 100 sales. She admitted that she sold the alleged amounts of methamphetamine to Officer Thompson and that she bought the quantity of methamphetamine found in the safe to sell for the CI, whom she had known since he was an infant. Vickie also testified that Richard's statement that he put the methamphetamine in the safe was not true and was made just to protect her. Finally, she testified that the cocaine found in their house was for their personal use.

### Case No. A03A0646

1. In his first enumeration of error, Richard Christopher asserts as error the trial court's denial of his motion to suppress the evidence gathered from his residence. We find no error.

> In reviewing the denial of a motion to suppress, we construe the record to uphold the trial court's findings and judgment. *Davis v. State*, 232 Ga. App. 450 (1) (501 SE2d 241) (1998). The trial court's findings on issues of credibility and conflicting evidence are to be upheld unless they are clearly erroneous. Id. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them.[4]

Richard contends that the motion to suppress should have been granted because Officer Thompson falsely averred in the affidavit presented to the magistrate judge that she had tested the drug samples, when in fact Investigator Lockard had tested them. This argument was not raised in Richard's motion to suppress, amended motion to suppress, during the motion hearing, or in his motion for new trial. "It is well established law that enumerations of error which raise questions for the first time on appeal present nothing for decision. Grounds for reversal which may be considered on appeal are limited to those which were argued before the trial court."[5] Accordingly, we will not consider this argument. Richard also argues that the evidence should have been suppressed because the officers executing the warrant failed to "knock and announce" their arrival, as required by the warrant, and because Investigator Lockard could

---

[4] (Citation omitted.) *Dole v. State*, 256 Ga. App. 146-147 (1) (567 SE2d 756) (2002).
[5] (Citation omitted.) *McBride v. State*, 213 Ga. App. 857, 858 (3) (c) (446 SE2d 193) (1994).

not recall how entry was actually gained into the Christophers' residence. We disagree.

"A law enforcement officer entering an occupied residence for the purpose of executing a search warrant is required to give or attempt to give verbal notice of his authority and purpose."[6] Investigator Lockard testified that the officers knocked on the door and announced their presence before entering the residence. Vickie testified that there was no knock or announcement. Instead, the officers kicked the door open and then flashed guns in their faces, hollering "hit the floor." Richard's account of the officers' entry was consistent with Vickie's. As stated earlier, "[u]nless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal."[7] Investigator Lockard's testimony supports a finding that the officers knocked and announced their arrival before entering the Christophers' residence.

Richard's argument that Investigator Lockard's inability to recall whether the door was opened for them or if it was unlocked requires suppression of the evidence also fails. OCGA § 17-5-27[8] requires that verbal notice be given before entry, not that the officer recall the specific details of how the officers' entry was made. Richard has cited no authority to the contrary. Accordingly, this enumeration is meritless.

2. Richard Christopher next contends that his videotaped statement should have been suppressed because it was obtained after he invoked his right to counsel.

> A suspect must make a clear and unambiguous request to have counsel present during a custodial interrogation to require law enforcement officers to stop their questioning. The suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the

---

[6] *Swan v. State*, 257 Ga. App. 704, 706 (3) (572 SE2d 64) (2002); see OCGA § 17-5-27.

[7] (Citation and punctuation omitted.) *State v. Davis*, 261 Ga. 225, 226 (404 SE2d 100) (1991); accord *Strickland v. State*, 153 Ga. App. 51, 52 (1) (264 SE2d 540) (1980) (when there is sufficient evidence to authorize a finding that verbal notice was given, the trial court's fact and credibility determinations on the issue must be accepted).

[8] All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant if, after verbal notice or an attempt in good faith to give verbal notice by the officer directed to execute the same of his authority and purpose: (1) He is refused admittance; (2) The person or persons within the building or property or part thereof refuse to acknowledge and answer the verbal notice or the presence of the person or persons therein is unknown to the officer; or (3) The building or property or part thereof is not then occupied by any person.

circumstances would understand the statement to be a request for an attorney.[9]

Therefore, "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."[10]

Although the question of whether a defendant has invoked his right to counsel might be considered an objective one, answering that question often requires a subjective determination. In the case at bar, the record includes a transcript of the testimony at the suppression hearing and a videotape of the challenged interrogation. We have watched the videotape and realized that this seemingly concrete evidence is open to interpretation and differing analyses. Despite the availability of the videotape, a dispute remains as to exactly what the defendant said and the significance of the words spoken.

During direct examination at the motion hearing, Investigator Lockard opined that Richard did invoke his right to counsel, an opinion not shared by the prosecution. During cross-examination, defense counsel asked Investigator Lockard: "Richard's statement when you *Mirandized* him his response was, to the best I could tell on this tape, 'I believe I'd like to talk to an attorney,' but you got it, is that what you recall?" and Investigator Lockard replied, "He did state that, yes, sir." Appellant now claims that he stated: "I would like to have an attorney. But you know, you've got it," while the state argues that he stated: "I believe I'd like to have an attorney, but you got it." The record does not reveal the significance of the cryptic phrase "you got it." The tape does show, however, that after Richard's statement about an attorney, Investigator Lockard asked, "Do you want to — If I ask you some questions, do you want to answer them?" and Richard replies, "I'll answer them."

Since "[a] trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing [must] be upheld on appeal unless clearly erroneous,"[11] we must defer to the trial court's finding. We note, however, that even if the admission of the statement were erroneous, the error, though of constitutional magnitude, would not warrant reversal because the statement was cumulative of other evidence in the record.[12]

---

[9] (Footnote omitted.) *Moore v. State*, 272 Ga. 359, 360 (2) (528 SE2d 793) (2000).

[10] (Citation and punctuation omitted.) *Roundtree v. State*, 270 Ga. 504, 506 (4) (511 SE2d 190) (1999).

[11] (Citation omitted.) *Edge v. State*, 275 Ga. 311, 312 (2) (567 SE2d 1) (2002).

[12] See *Mika v. State*, 256 Ga. App. 546, 547 (2) (568 SE2d 818) (2002).

3. Richard Christopher's last enumerated error is that his trial counsel was ineffective because an actual conflict of interest was created by his joint representation of the defendants. Specifically, the conflict arose when he could not pursue a plea bargain for Richard because it may have involved offering Richard's testimony against Vickie. We find no error.

> In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. By actual conflict we mean more than the bare possibility that a conflict might have developed. . . . [Furthermore,] where each defendant confirmed, on the record, that they had discussed the case thoroughly with their counsel, and each stated that there was no conflict of interest [and] that they were satisfied to proceed with one counsel[,] if any error occurred it was induced by these defendants' statements and induced error is impermissible.[13]

Here, the trial court questioned the defendants about the joint representation as follows:[14]

> The Court: [D]o you recall [your attorney] talking to you about the possibilities of conflicts involved with him representing the both of you?
> Ms. Christopher: Yes, I do.
> Mr. Christopher: Yes, sir.
> The Court: And for example do you understand in some criminal cases, where there's more than one Defendant, the strategy is to point the finger at each other. Do you understand that, ma'am?
> Ms. Christopher: Yes, sir.
> The Court: Do you understand that, sir?
> Mr. Christopher: Yes, sir.
> The Court: And when he's representing both sides it's hard for him to have one of his clients point the finger at another of his clients. Do you understand that, ma'am?

---

[13] (Citations and punctuation omitted.) *Pittman v. State*, 208 Ga. App. 211, 217 (5) (430 SE2d 141) (1993).

[14] See *Dean v. State*, 247 Ga. 724, 725, n. 1 (279 SE2d 217) (1981) ("In an effort to reduce case-by-case review, in cases where co-indictees or co-conspirators are represented by the same attorney or firm, trial judges should point out to the defendants that joint representation may create a conflict of interest and determine whether all such defendants agree to joint representation.") (emphasis omitted).

Ms. Christopher: Yes, sir.

The Court: Do you understand that, sir?

Mr. Christopher: Yes, sir.

The Court: Okay. Do you understand that it kind of in some ways it may limit what he can do as far as strategy because he represents both of you, in that he's trying to have both of your interests, best interests in mind at the same time? Do you understand that?

Ms. Christopher: Yes, sir.

Mr. Christopher: Yes, sir.

The Court: Understanding that, is it your desire for [your attorney] to represent you and your spouse during this trial?

Ms. Christopher: Yes, sir, I do.

Mr. Christopher: Yes, sir.

Accordingly, any error was induced by the defendants and cannot serve as the basis for reversal on appeal.[15] Furthermore, there is no evidence that Richard would have been offered a better deal had he testified against Vickie, especially since her testimony, alone, was sufficiently inculpatory. In fact, the record shows that the plea bargain offered to both defendants was the same, the mandatory minimum of ten years. Therefore, this enumeration fails.

## Case No. A03A0647

4. In her first enumeration of error, Vickie Christopher argues that her motion to suppress should have been granted because the officers failed to knock and announce their presence, in accordance with the search warrant. We addressed this argument in Division 1, and the same result is warranted here.

5. Vickie next argues that the trial court committed "plain error" by rejecting her challenge to the constitutionality of OCGA § 16-13-31 (e) on the grounds that it violated her equal protection and due process rights. She first raised this argument in her amended motion for new trial. Our Supreme Court has held that "a criminal defendant may not initiate a constitutional attack against a statute in . . . a motion for a new trial. . . . A constitutional attack on a state statute must be made at the first opportunity, and it is too late to raise such question after a guilty verdict has been returned by the jury."[16] Accordingly, this enumeration also fails.

---

[15] *Pittman*, supra.

[16] (Punctuation and footnotes omitted.) *Perez-Castillo v. State*, 275 Ga. 124, 125 (562 SE2d 184) (2002).

6. In her next enumeration, Vickie argues that the trial court erred by denying her motions for full and supplemental transcription. In Vickie's motion, she stated that the purpose of the request was to preserve her right to a meaningful appeal and to allow for overnight transcription. During trial, her counsel argued that in light of the complexity of the legal issues in drug cases, the purpose of the request was to have a backup audio recording if "the official Court Reporter is unable to catch something." The trial court denied the motions.

In *Estep v. State*,[17] we addressed the question of whether the denial of a defendant's request for supplementary transcription by an unofficial court reporter at the defendant's expense was erroneous.[18] As we stated in that case,

> We recognize that the trial court has a broad discretion in regulating and controlling the business of the court, and the appellate court should never interfere with its exercise unless it is made to appear that wrong or oppression results from its abuse, or the court in some manner takes away rights the parties have under the law. . . . Nevertheless, request by an attorney for permission to have the proceedings transcribed by an unofficial professional court reporter in addition to the official court reporter should normally be granted. In many trials it is necessary for the advocate in fulfilling his obligation to his client to obtain daily transcripts.[19]

However, "[i]njury as well as error must be shown before a new trial will be granted."[20] Like the defendant in *Estep*, Vickie has not pointed to any factor that would show that she was harmed by the denial of her request or that there were any inaccuracies in the record. Therefore, the trial court's denial of her motions does not warrant a new trial.

7. Next, Vickie argues that her trial counsel was ineffective for failing to raise a constitutional challenge to OCGA § 16-13-31 (e). "In order to prevail on a claim of ineffective assistance of counsel, appellant must show both that counsel's performance was deficient and, but for the deficiency, the outcome of the trial would have been differ-

---

[17] 129 Ga. App. 909 (201 SE2d 809) (1973).
[18] Id. at 912-913 (3).
[19] (Citation omitted.) Id. at 913 (3).
[20] (Citations and punctuation omitted.) Id.; accord *Goodwyne v. State*, 38 Ga. App. 183, 184 (143 SE 443) (1928).

ent."[21] "Failure to make a meritless objection cannot be evidence of ineffective assistance of counsel."[22]

Vickie Christopher argues that OCGA § 16-13-31 (e) violates her due process and equal protection rights because it allows a conviction for trafficking in methamphetamine if the defendant possesses 28 grams or more, irrespective of the purity of the methamphetamine mixture, while OCGA § 16-13-31 (a) only allows a conviction for trafficking in cocaine if the mixture of cocaine has a purity of at least ten percent. A similar argument was raised in *Green v. State*,[23] wherein the defendant complained that the statute raised to the level of trafficking the possession of infinitesimal and unuseable amounts of methamphetamine.[24] We declined to address the argument in *Green* because the defendant was in possession of 54.5 grams of methamphetamine and the weight of the total sample was 56.7 grams;[25] thus, any argument about infinitesimal amounts did not apply to the facts of the case. Similarly here, Vickie's argument does not apply to the facts of this case.

The state's expert testified that 56.2 grams of the 79 grams of the substance tested was positive for methamphetamine. There was no proffer or evidence as to the purity of the mixture of the methamphetamine or any allegation by the defendants that the substance was not methamphetamine. Accordingly, we cannot find counsel's performance deficient for failing to challenge the constitutionality of the statute, when such a challenge was not supported by the evidence in the case.

8. Lastly, Vickie asserts that trial counsel was ineffective because his joint representation created an actual conflict of interest. For reasons outlined in Division 3, this enumeration fails. Nonetheless, we point out that Vickie's argument that trial counsel was unable to argue that the methamphetamine in the safe belonged to Richard completely ignores the other evidence in the case, to wit: Vickie's testimony that she put the methamphetamine in the safe and that her husband was lying to protect her, and the notes about the various drug sales. Had Vickie and Richard attempted to blame each other, a different result may have been warranted. Where they implicated themselves in the interest of protecting the other, however, no conflict of interest arose, and counsel's joint representation of both defendants did not render his assistance ineffective.

---

[21] (Punctuation omitted.) *Adkinson v. State*, 236 Ga. App. 270, 272 (3) (511 SE2d 527) (1999), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[22] (Footnote omitted.) *Landers v. State*, 255 Ga. App. 410, 412 (3) (565 SE2d 585) (2002).

[23] 239 Ga. App. 617 (521 SE2d 441) (1999).

[24] Id. at 619 (4).

[25] Id. at 619-620 (4).

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JUNE 18, 2003 —
RECONSIDERATION DENIED JULY 10, 2003.

*Stephen F. Mackie*, for appellant (case no. A03A0646).
*G. Richard Stepp*, for appellant (case no. A03A0647).
*Daniel J. Porter, District Attorney, John S. Melvin, Assistant District Attorney*, for appellee.