A05A1117. BLUE v. THE STATE.
(621 SE2d 616)

MIKELL, Judge.

Following a jury trial, Gregory Blue was convicted of trafficking in cocaine and acquitted of possession of marijuana. On appeal, he contends that the trial court erred in denying his motion to suppress; that there was insufficient evidence to support his conviction; that the trial court erred in failing to ask if he wished to testify at trial; that

---

[7] *Crane v. Samples*, 2004 Ga. LEXIS 789 (Sept. 8, 2004).
[8] *Grovnor v. Bd. of Regents &c. of Ga.*, 231 Ga. App. 120, 121 (2) (497 SE2d 652) (1998).

his trial counsel was ineffective; and that he was denied his right of allocution. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia.*[1] "The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,"[2] and the evidence is viewed in the light most favorable to the verdict.[3] So viewed, the evidence shows that between September 10, 2002, and September 26, 2002, Investigator D. M. Ricks, a ten-year veteran of the City of Atlanta Police Department, conducted surveillance of two residences on Commercial Avenue (645 and 665 Commercial Avenue). Ricks watched the residences on three separate occasions from noon until 8:00 p.m., during which time he observed almost twenty drug transactions. Ricks testified that he observed buyers walk up to 665 Commercial Avenue and purchase drugs from an unknown man standing in the driveway. On one occasion, Ricks observed the unknown man walk over to 645 Commercial Avenue and meet Blue in order to "re-up" his supply of crack cocaine. Ricks retained a confidential informant ("CI"). The CI went to 645 Commercial Avenue, where he spoke to Blue. During their conversation, Blue pointed in the direction of 665 Commercial Avenue. The CI walked over to 665 Commercial Avenue and purchased crack cocaine from a man standing in the driveway.

Ricks secured a search warrant for both addresses. As Ricks and Investigator B. L. Lucas approached the 645 residence to execute the search warrant, they heard someone run from the left side of the home (the kitchen area) to the right side of the home (the bathroom area). After entering the home, Ricks and Lucas heard a toilet flushing and observed Blue and his co-defendant and wife, Tabatha Mayfield, leave the bathroom area of the home.[4] Ricks and Lucas entered the bathroom and saw water on the floor and a "pyrex-type pot" on the floor next to the toilet. The pot contained a substance, which appeared to be cocaine residue. Lucas cracked open the toilet and discovered 35.09 grams of 78.8 percent pure crack cocaine in the toilet's pipes.

Ricks next entered the kitchen and noticed that the stove was still warm. At trial, he testified that crack cocaine starts out in a powder form and is heated with baking soda, water, and cutting

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Punctuation and footnote omitted.) *Christopher v. State*, 262 Ga. App. 257 (585 SE2d 107) (2003).

[3] *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998).

[4] Mayfield was acquitted of the charges against her.

agents to produce its final consistency. Ricks stated that it is very common to cook crack cocaine on a kitchen stove. Ricks arrested Blue and Mayfield and discovered $906, in small bills, in Blue's pocket. Officers also recovered a surveillance camera system, which allowed a person in the master bedroom to observe persons on the porch of the home.

The state introduced similar transaction evidence showing that on October 13, 1998, Corporal Rodney Middlebrooks of the Fulton County Police Department served an arrest warrant on Blue at 645 Commercial Avenue. While Middlebrooks was handcuffing him, Blue tossed a plastic bag of crack cocaine on the floor.

1. Blue argues that the trial court erred in denying his motion to suppress the evidence seized pursuant to the search warrant, contending that the supporting affidavit failed to establish probable cause because it was based on stale information. Specifically, Blue contends that the affidavit referred to two search warrants executed at 645 Commercial Avenue almost one year before the warrant in this case, but that it did not suggest that Blue was involved in those instances.

> In determining whether an affidavit sufficiently establishes probable cause, the totality of the circumstances analysis is to be employed. Under this test, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.[5]

Pretermitting whether the first paragraph of Ricks's affidavit was based on stale information, the remainder of the affidavit provided the magistrate with a substantial basis for finding probable cause.

On September 10, 2002, Ricks observed a steady flow of vehicle and pedestrian traffic around 645 and 665 Commercial Avenue. Ricks explained that a suspected seller would enter the home at 645 Commercial Avenue and then return to 665 Commercial Avenue to complete a sale. After completing five or six sales, the suspected seller would return to 645 Commercial Avenue. Ricks concluded that drugs were being kept in 645 Commercial Avenue and sold from 665

---

[5] (Footnote omitted.) *Stevens v. State*, 245 Ga. App. 237, 240 (4) (537 SE2d 688) (2000).

Commercial Avenue. Moreover, within hours of the issuance of the search warrant, Ricks observed the CI attempt to buy "1 Hard" at 645 Commercial Avenue. When the CI told Blue that he wanted "1 Hard," Blue directed the CI to 665 Commercial Avenue saying, "he just walked up to that house two doors up. Go up there and get it." Ricks then observed the CI making a controlled buy at 665 Commercial Avenue. Under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed.[6] Accordingly, the trial court did not err in denying Blue's motion to suppress.

2. Blue contends that the evidence was insufficient to support his conviction. We disagree.

OCGA § 16-13-31 (a) (1) provides that, "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine." Under *Jackson v. Virginia*,[7] the evidence outlined above sufficed to sustain Blue's conviction for trafficking in cocaine. Blue's claim that the evidence was insufficient to support his conviction because others had equal access to the house was decided adversely to him in *Sears v. State*.[8]

3. Blue contends he was denied his right of allocution as required by OCGA § 17-10-2 (a). Specifically, Blue complains that when he tried to speak, he was stopped by the trial court and immediately sentenced.

OCGA § 17-10-2 (a) (1) provides that after a guilty verdict in a felony case, the trial court

> shall conduct a presentence hearing at which the only issue shall be the determination of punishment to be imposed. In the hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the defendant, or the absence of any prior conviction and pleas.

---

[6] See id. at 241 (4).

[7] Supra.

[8] 244 Ga. App. 718, 719 (536 SE2d 605) (2000) (equal access issue is one for jury determination, and where defendant, her daughter, and her son-in-law had access to backyard shed where drugs were located, jury could have concluded that daughter and son-in-law had no opportunity to place drugs in shed).

The statute further provides that "the defendant *or* the defendant's counsel" shall present argument to the trial judge regarding punishment.[9] At the sentencing hearing in this case, Blue's counsel spoke on his behalf regarding mitigation and punishment. Neither Blue nor his counsel requested that Blue speak for himself. The trial court then stated, "Mr. Blue, You may stand. I am ready to sentence you." During the trial court's pronouncement of Blue's sentence and the reasons for it, Blue began to interrupt and was admonished by the trial court. Since Blue's counsel spoke on his behalf at the sentencing hearing, the statute was satisfied; the trial court's admonishment did not amount to a denial of Blue's right of allocution.

4. Blue contends that his trial counsel was ineffective for not allowing him to testify.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous. In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[10]

Moreover, it is the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony.[11]

At the hearing on his motion for new trial, Blue testified that trial counsel prepared him to testify at trial. According to Blue, he advised trial counsel several times of his desire to testify, but trial counsel told him it would not be in "his best interest."[12] Blue conceded that he never told the trial court that he wanted to testify.

---

[9] (Emphasis supplied.) OCGA § 17-10-2 (a) (2).

[10] (Footnotes omitted.) *Debaeke v. State*, 270 Ga. App. 169-170 (605 SE2d 882) (2004).

[11] *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995).

[12] Blue would have testified that on the evening of September 26, 2002, he was home with his children when Mayfield arrived around 8:45 p.m. When Blue told Mayfield that the police were down the street, she "just took off running back and forth through the house." According

Trial counsel testified at the hearing that Blue had conveyed his desire to testify but that counsel tried to dissuade him because he believed Blue might perjure himself. Trial counsel testified that he advised Blue several times of his right to remain silent or to testify, and prepared him to testify. Trial counsel recalled having advised the court during the trial that he had received a note from Blue indicating that he wanted to testify. When the trial court asked if Blue planned to testify, trial counsel said no. Blue did not challenge this decision.

The record shows that after the colloquy between trial counsel and the court, the court stood in recess for five minutes. Trial counsel testified that if Blue had indicated a desire to testify during that time, he would have advised the trial court. Additionally, had there been any major disagreement between him and Blue about whether Blue would testify, he would have alerted the court. The record reflects that Blue was present when his trial counsel told the trial court that the defense had no more witnesses to call. After excusing the jury for the day, the trial court began the charge conference. During the charge conference, in Blue's presence, trial counsel specifically requested a charge on the defendant's failure to testify.

Though Blue now insists that trial counsel did not allow him to testify at trial, the record supports a finding that Blue elected to follow trial counsel's advice not to testify. Blue was present during all discussions between the trial court and counsel and could have spoken up and demanded his right to testify. Accordingly, Blue has failed to prove that his counsel's performance was deficient. Even if we assume that trial counsel's performance was deficient, however, Blue has failed to make the requisite showing of prejudice to his defense that the drugs belonged to Mayfield. The jury was instructed on the equal access defense and apparently rejected it.

5. In a related enumeration of error, Blue contends that the trial court violated his constitutional rights by not conducting an inquiry at trial to determine whether he wished to testify. We disagree.

Trial counsel, and not the trial court, is primarily responsible for advising a defendant of his fundamental constitutional right to testify in his own behalf.[13] At the hearing on the motion for new trial, counsel testified that he advised Blue of his right to remain silent or

---

to Blue, when he asked what was going on, Mayfield said she had some drugs "on her."

[13] *Brock v. State*, 270 Ga. App. 250, 251 (1) (605 SE2d 907) (2004), citing *Mobley*, supra. See also *Barron v. State*, 264 Ga. 865, 866 (2), n. 2 (452 SE2d 504) (1995) ("[w]hile a review of the authorities . . . does not persuade us that we should mandate the trial court to engage in an on-the-record colloquy with a defendant to inquire of the non-testifying defendant whether he desires to waive his right to testify, we acknowledge that the better practice would be for the trial court to include this inquiry as a matter of routine in order to avoid a post-conviction attack of the nature raised in this appeal") (citation omitted).

to testify, and prepared him to testify. Accordingly, this argument presents no grounds for reversal.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 29, 2005 —

*Robert H. Citronberg*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Boyter & Baker, Elizabeth A. Baker*, for appellee.