## A10A1841. THOMAS v. THE STATE.
### (701 SE2d 895)

JOHNSON, Judge.

A jury found Carnell Jerrard Thomas guilty of trafficking in heroin pursuant to OCGA § 16-13-31 (b) (3). Thomas appeals from the conviction entered on the verdict and the denial of his motion for new trial, claiming that (i) the evidence introduced against him was insufficient to support his conviction, (ii) the trial court erred in denying his motion to require the state to determine the purity of the heroin he sold to an undercover officer, and (iii) his trial counsel was ineffective. We find no error and affirm.

1. When reviewing a challenge to the sufficiency of the evidence used to support a conviction,

> we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence shows that on March 4, 2005, an undercover officer with the Gwinnett County Drug Task Force arranged to meet with a man, later identified as Thomas, who was interested in selling heroin. When Thomas met the officer, he sold him two small baggies that he offered as "samples" of the heroin he was selling. Thomas told the officer that the baggies contained "two

---

[6] *Hernandez v. Resolution Trust Corp.*, 210 Ga. App. 538, 539 (2) (436 SE2d 534) (1993).

[1] (Citations omitted.) *Barr v. State*, 302 Ga. App. 60 (1) (690 SE2d 643) (2010).

different types" of heroin, and that he should call him and let him know "which one [he] liked the best." The substance contained in the baggies later tested positive for heroin, and Thomas pled guilty to selling a controlled substance pursuant to OCGA § 16-13-30 (b) in connection with this transaction.

During the next several days, Thomas contacted the officer numerous times to find out when he would be making another purchase. The officer ultimately agreed to buy two ounces of heroin as well as four ounces of cocaine. While the price for the heroin was what the officer expected, the price that Thomas quoted for the cocaine was so low that the officer suspected it might be "fake dope."

On March 7, 2005, the officer arranged to meet with Thomas to make a second transaction. That day, Thomas asked Herbert Edwards to drive him around while he purchased a "look-alike" to sell as if it were cocaine. Thomas purchased two bags of a white substance that he told Edwards he planned to sell as cocaine. At another store, Thomas bought one bag of a substance that was alternatively described as white, beige, and off-white that he told Edwards he planned to sell as heroin. During the period that Edwards was driving Thomas around, Thomas snorted four or five small bags of heroin that he had purchased previously.

Later that day, Thomas arrived at the designated location for the drug sale in a white car. He was followed by Edwards, who was driving an SUV, and who parked a short distance away. After Thomas spoke briefly with the undercover officer, he walked to the SUV and returned with two baggies of white chunky material that he presented to the officer as cocaine and one "corner tie," which is the corner of a plastic bag knotted at the top, containing brown material that he presented to the officer as heroin. As the officer suspected, the white chunky material tested negative for cocaine, and Thomas later pled guilty to selling a noncontrolled substance as if it were cocaine pursuant to OCGA § 16-13-30.1. The substance in the corner tie tested positive for heroin, weighed 31.04 grams independent of packaging, and served as the basis of the allegation that Thomas was guilty of trafficking heroin.

Inside the SUV, officers found five small baggies containing brown material, which Edwards claimed to belong to him and that later tested positive for heroin. Officers also found a large bag of material containing a substance alternatively described as brown, beige, and white. Edwards told the officers that the substance was from a novelty store, and it later tested negative for any common controlled substance. Edwards pled guilty to trafficking in heroin under OCGA § 16-13-31 (b) and the unlawful distribution of a noncontrolled substance under OCGA § 16-13-30.1. The "look

alike" substances and the substances revealed to contain heroin were all introduced into evidence for consideration by the jury.

OCGA § 16-13-31 (b) provides that any person who knowingly sells or possesses "4 grams or more of any morphine or opium . . . including heroin . . . or 4 grams or more of any mixture containing any such substance . . ." is guilty of trafficking in such substance. Here, the expert witness from the state crime lab testified that she (i) examined the substance contained in the corner tie that Thomas sold to the undercover officer as heroin during the second transaction, (ii) took a "representative sampling" of different parts of the substance, (iii) subjected the samples to three separate tests, and (iv) concluded that the substance contained heroin and weighed over 28 grams. Whether the substance in the corner tie was a mixture containing heroin or merely a "look alike" substance was a question for the jury, as was the weight to be given to the testimony of the state's expert from the crime lab.[2] The evidence was sufficient to support Thomas' conviction for trafficking in heroin.

2. Thomas claims that the trial court erred in denying his post-trial motion to require the state crime lab to test the substance contained in the corner tie to determine the purity of the heroin it contained. We disagree. OCGA § 16-13-31 (b) does not require that the substance containing heroin exceed any purity threshold. Indeed, this was discussed at trial, and Thomas was able to elicit testimony from the expert from the crime lab that the tests she performed did not establish the purity of the substance and that the crime lab did not have the ability to test for the purity of heroin contained in a sample.

3. Thomas argues that his trial counsel was ineffective for failing to (i) object to the admission into evidence of the substance contained in the corner tie, which supported his conviction for trafficking in heroin, or (ii) raise a constitutional challenge to OCGA § 16-13-31 (b). In order to prevail on a claim of ineffective assistance of counsel, Thomas must show both that his counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different.[3]

(a) First, Thomas claims that his trial counsel should have objected to the admission of the substance contained in the corner tie because the state was unable to show the purity of the heroin it contained. As set forth in Division 2, however, the state was not required to establish the purity of the substance. Given that failure

---

[2] *Castillo v. State*, 263 Ga. App. 772, 773 (1) (589 SE2d 325) (2003).
[3] *Christopher v. State*, 262 Ga. App. 257, 264-265 (7) (585 SE2d 107) (2003).

to make a meritless objection cannot be evidence of ineffective assistance of counsel,[4] this enumeration has no merit.

(b) Thomas also claims his trial counsel erred in failing to raise a constitutional challenge to OCGA § 16-13-31 (b) "on the ground that the statute raises to the level of trafficking the possession of infinitesimal and unusable amounts of heroin." We disagree.

First, no evidence was presented that the substance contained in the corner tie contained "infinitesimal and unusable amounts of heroin." The expert witness from the crime lab testified that she believed a sample would have to contain more than ten percent heroin in order to test positive for the drug; and no evidence was introduced to show that the substance was not "useable." We will not find ineffective assistance of counsel where claims are based on nothing more than speculation or conjecture.[5] Because Thomas' constitutional claims are not supported by the evidence, we cannot find trial counsel's performance deficient for failing to challenge the constitutionality of the heroin trafficking statute.[6]

Moreover, the Supreme Court of Georgia has already considered similar constitutional challenges to OCGA § 16-13-31 (e), which sets forth the elements to trafficking in methamphetamine.[7] Like the statute for trafficking in heroin, OCGA § 16-13-31 (e) imposes no purity requirement. While OCGA § 16-13-31 (a) allows a conviction for trafficking in cocaine only if a mixture of cocaine has a purity of at least ten percent, "the legislature is under no duty to treat all drugs and drug offenders the same."[8] In addition, the different requirement for establishing trafficking in methamphetamine as opposed to trafficking in cocaine was found constitutional even though both of those drugs are listed as Schedule II controlled substances.[9] The case here is even stronger because heroin is a Schedule I controlled substance,[10] and the General Assembly's different treatment of heroin is "rationally related" to the promotion of a legitimate state objective.[11] Because Thomas' claims regarding the

---

[4] Id. at 265 (7).

[5] See *Hammond v. State*, 264 Ga. 879, 884 (5) (452 SE2d 745) (1995).

[6] *Christopher*, supra at 265 (7).

[7] *Hardin v. State*, 277 Ga. 242, 243 (2) (587 SE2d 634) (2003); *Christopher*, supra; see also *Flores v. State*, 277 Ga. App. 211, 214-215 (5) (626 SE2d 181) (2006) (sentencing requirements under OCGA § 16-13-31 (e) do not violate constitutional prohibition against cruel and unusual punishment).

[8] *Hardin*, supra.

[9] Id. ("The mere fact that cocaine and methamphetamine are both listed as Schedule II controlled substances does not mean that the legislature must enact identical statutes pertaining to those substances.")

[10] OCGA § 16-13-25 (2) (J).

[11] See *Lavelle v. State*, 250 Ga. 224, 225 (1) (297 SE2d 234) (1982).

constitutionality of the heroin trafficking statute would have failed, he was not prejudiced by his trial counsel's decision not to raise them.

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED SEPTEMBER 30, 2010 — 

*G. Richard Stepp*, for appellant.
*Daniel J. Porter, District Attorney, Karen M. Harris, Assistant District Attorney*, for appellee.