**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 29, 2014**

# In the Court of Appeals of Georgia

A14A0380. PRIGMORE v. THE STATE.

RAY, Judge.

Spencer Prigmore was arrested on charges of vehicular homicide (OCGA § 40-6-393), reckless driving (OCGA § 40-6-390), leaving the scene of an accident (OCGA § 40-6-270), and driving under the influence of drugs (OCGA § 40-6-391).[1] We granted Prigmore's application for interlocutory appeal to consider whether the trial court erred in denying his motion for pre-trial bond. For the reasons that follow, we affirm.

---

[1] At a magistrate court preliminary hearing, the DUI warrant was dismissed for insufficient evidence because the results of the blood test were still pending.

In determining whether the trial court erred in denying bond, we apply a "flagrant abuse" standard. (Citation omitted.) *Hardy v. State*, 192 Ga. App. 860, 860 (2) (386 SE2d 731) (1989). In other words, the trial court's discretion will not be disturbed "unless it was manifestly or flagrantly abused." (Citation omitted.) Id.

The transcript from the bond hearing shows the following facts. Prigmore was driving his vehicle along Lawrenceville Highway at about 6:45 p.m. when he crossed a lane of traffic and left the roadway, traveled for some distance on the sidewalk, and struck and killed a woman and her six-year-old daughter. After striking the pedestrians, Prigmore returned to the roadway and continued driving for approximately a quarter-mile before turning into a parking lot and parking his vehicle in the drive-thru of a business.[2] Witnesses to the accident had followed Prigmore and informed police of his location. When the police approached Prigmore in his vehicle, he appeared very upset, and he stated "[O]h, my God, just tell me, did I kill them[?]" After Prigmore was taken into custody for further investigation, police officers described Prigmore as being so intoxicated that they could not get any statement from him. Prigmore was read the implied consent law, but he refused to submit to a state-

---

[2] There was some evidence that the vehicle, at this point, was no longer operable.

administered test. Consequently, the police sought and obtained a search warrant for a blood draw.[3] While being held in jail on these charges, Prigmore was placed on suicide watch due to his despondency over the incident.

Although Prigmore did not testify at the bond hearing, he presented witnesses to testify regarding his ties to the community. In response, the State elicited testimony that Prigmore had multiple convictions for driving under the influence. The State then proffered evidence that Prigmore has three previous DUI convictions, the most recent in 1999. In addition, he entered a plea as a first-offender to a charge of possession of a controlled substance in 1998, followed by a battery conviction in 2006, a charge of furnishing alcohol to a minor in 2009, and a shoplifting conviction in 2012. The State also argued that Prigmore may flee if released, pointing to evidence that he left the scene after running over the pedestrians and that he stopped when his vehicle became inoperable a quarter-mile down the road.

Under Georgia law, a trial court may release a defendant on bail if it finds that the defendant:

---

[3] The results of the blood test were not yet available at the time of the bond hearing. However, the State indicated at the hearing that it would pursue the DUI charge if the eventual results of the blood test indicated that Prigmore was intoxicated at the time of the accident.

(1) [p]oses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required; (2) [p]oses no significant threat or danger to any person, to the community, or to any property in the community; (3) [p]oses no significant risk of committing any felony pending trial; and (4) [p]oses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice.

OCGA § 17-6-1 (e).

In announcing its ruling at the conclusion of the bond hearing, the trial court expressed concern about Prigmore's well-being and that Prigmore may pose a danger to himself and to the community if released. The trial court also acknowledged that there was evidence that officers believed that Prigmore may have been under the influence at the time of the accident, and it expressed concern about Prigmore's history with alcohol and driving under the influence. The trial court further stated that it was concerned about the possibility that Prigmore may flee. In its written order, the trial court stated that Prigmore "poses a significant risk of committing further felonies pending trial of this matter and poses a significant risk to persons in the community, including himself."

Given the facts presented to the trial court, we cannot say that it flagrantly abused its discretion in reaching its conclusions. "Whether we agree with [the trial

4

court's] findings and conclusions is not controlling." (Citations omitted.) *Hardy,*
supra. As there is some evidence to support at least part of the underlying basis for
the trial court's conclusions, the trial court did not err in denying bond. Id.

*Judgment affirmed. Andrews, P. J., concurs. McFadden, J., concurs specially.*

A14A0380. PRIGMORE v. THE STATE.

McFADDEN, Judge, concurring specially.

I concur fully in the majority opinion. I write separately to express my concerns about its recitation that we are to apply a "flagrant abuse" standard of review.

I do not dispute that it is an accurate recitation of our law. It follows a line of cases going back to a decision authored by Justice Joseph Rucker Lamar, who later served on the Supreme Court of the United States, *Jernagin v. State*, 118 Ga. 307 (45 SE 411) (1903), and through the case which the parties agree to be the leading authority in the present context, *Ayala v. State*, 262 Ga. 704 (425 SE2d 282) (1993).

Nevertheless I question what it means to say that we will reverse only for flagrant abuse of discretion. The most obvious interpretation is that we will affirm in cases of merely ordinary abuse of discretion. But that interpretation seems to me problematic.

Such an interpretation would be at least in tension with our Supreme Court's opinion in *Ayala*, which reaffirms that a trial court must "must explain its reasons for denying bond to assist appellate review," 262 Ga. at 705, reaffirms that "[i]n this state, unlike many other states, the presumption of innocence has always remained with the person accused of a capital offense, even during the trial," 262 Ga. at 706,

and holds that while "the defendant has the burden of coming forward initially with evidence," 262 Ga. 705, the state nevertheless "has the burden of persuasion in convincing the superior court that a defendant is not entitled to pretrial release." 262 Ga. at 706. And a rule requiring us to affirm in cases of less-than-flagrant abuse of discretion would lack the principled justification underlying the rule that plain error review is limited to obvious error. See *Guajardo v. State*, 290 Ga. 172, 175–176 (4) (718 SE2d 292) (2011).

Review for abuse of discretion is necessarily deferential: discretion is authority to choose. And our case law frequently reaffirms that the discretion afforded our trial courts is broad. See *Krause v. State*, 286 Ga. 745, 749 (5) (691 SE2d 211) (2010) (trial court has broad discretion to grant or deny motion for severance); *Ogletree v. State*, 300 Ga. App. 365, 366 (685 SE2d 351) (2009) (absent prosecutorial misconduct, trial court has broad discretion in deciding whether to grant a mistrial); *Christopher v. State*, 262 Ga. App. 257, 264 (6) (585 SE2d 107) (2003) (trial court has broad discretion in regulation and controlling the business of the court). So it seems to me that "flagrant" in this context is simply an intensifier - an exercise in lily gilding better avoided.