**FOURTH DIVISION
DOYLE, P. J.,
MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 3, 2014**

# In the Court of Appeals of Georgia

A14A0501. MERCURE v. CITY OF ATLANTA.

DILLARD, Judge.

Mason Mercure, an officer with the City of Atlanta Police Department ("APD"), appeals a decision by the City of Atlanta Civil Service Board ("the Board") to uphold a 20-day, unpaid suspension levied against him by the chief of police (which was affirmed by the superior court). In this discretionary appeal, Mercure argues that the APD work rule he was found to have violated runs afoul of OCGA § 17-4-20 (d) and applicable case law. For the reasons set forth *infra*, we affirm.

The record reflects that on November 27, 2011, Mercure observed a vehicle operating without a tag and initiated a traffic stop. While investigating the stop and speaking to the driver, Mercure saw the driver remove what he suspected to be cocaine wrapped in cellophane from a cigarette box and place the "hit" in his mouth.

Thereafter, Mercure called for backup to assist in arresting the suspect, who was larger than himself. Nevertheless, before backup could arrive, Mercure removed the suspect from the vehicle, handcuffed him subject to arrest, and walked him over to the patrol car. And as Mercure prepared to place the suspect inside of the vehicle, the suspect spoke and Mercure observed the "hit" of cocaine still in his mouth.

Meanwhile, as Mercure led the suspect to the patrol car, Officer Joseph Dean arrived on the scene as backup. Dean, a 26-year-veteran of the APD, saw Mercure and the suspect standing beside the vehicle and observed that the suspect was in handcuffs, was not resisting arrest, and was not acting belligerent. But suddenly, Mercure grabbed the handcuffed suspect by the neck and attempted to make him spit out what was in his mouth. Mercure and the suspect then fell to the ground, where Mercure wrapped his arm around the suspect's neck. Mercure later testified that he learned these maneuvers during his service with the United States Marine Corps, and it was undisputed that these maneuvers were not taught by the Atlanta Police Academy. According to Dean, each hold on the suspect's neck lasted for approximately five seconds.

During the course of these events, Dean called for an ambulance, which arrived after the struggle between Mercure and the suspect ended. Thereafter, the suspect was

transported to a local hospital, where he refused treatment. No cocaine was ever recovered.

Shortly after the incident, Dean reported what he observed to the Office of Professional Standards, believing that Mercure used unnecessary, unreasonable force upon the suspect. An investigation then ensued and Mercure was ultimately suspended for violating APD work rules prohibiting the use of unreasonable force and certain neck restraints. He appealed that decision to the Civil Service Board, which upheld the suspension, and then to the Superior Court of Fulton County, which affirmed the Board's decision. We granted Mercure's application for discretionary appeal, and this appeal follows.

Our analysis begins with the well-established principle that administrative-board decisions of this nature will be affirmed if there is any evidence to support the ruling.[1] And in upholding Mercure's suspension, the Board found that Mercure used an APD-prohibited type of choke-hold on the suspect while the suspect was handcuffed and, accordingly, that Mercure's use of force was unnecessary and unreasonable when the suspect posed no threat. Mercure contends on appeal that the

---

[1] *Robinson v. Butler*, 319 Ga. App. 633, 634-35 (737 SE2d 731) (2013).

3

Board erred by enforcing work rules that are in direct conflict with Georgia law. We disagree.

APD work rule 4.2.50 provides that

[e]mployees shall only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself or another from physical assault, or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation.

Furthermore, APD work rule 4.1.7 instructs that "[e]mployees will not use neck restraints, carotid artery holds, or other weaponless control techniques that are not taught or approved by the Department due to the potential for serious injury or death."

Mercure was found to have violated both of the foregoing rules, but he argues on appeal that the prohibition against neck restraints conflicts with OCGA § 17-4-20 (d), which provides that "[n]o law enforcement agency of this state or any political

4

subdivision of this state shall adopt or promulgate any rule, regulation, or policy which prohibits a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of this state."[2]

A plain reading of OCGA § 17-4-20 (d), however, shows that Mercure's suspension was properly upheld because this statutory subsection is wholly inapplicable to the facts of this case. Indeed, it is undisputed that Mercure was *not* "apprehending"[3] the suspect when he administered the maneuvers at issue.[4] To the contrary, the suspect was already under arrest, restrained, and not resisting in any way.[5] Additionally, by his own admission, Mercure's actions were solely directed at

---

[2] OCGA § 17-4-20 (d).

[3] *See* The Compact Oxford English Dictionary 65 (2d ed. 1991) (defining "apprehend" as, *inter alia*, "[t]o lay hold upon, seize, with hands . . . ."); *id.* (defining "apprehended" as, *inter alia*, "[t]aken hold of, seized; arrested . . . .").

[4] *Cf. Allen v. City of Atlanta*, 235 Ga. App. 516, 516-18 (510 SE2d 64) (1998) (reversing officer's suspension for violating work rule, finding that work rule prohibiting discharge of a firearm "if the lives of innocent persons may be in danger" conflicted with, *inter alia*, OCGA § 17-4-20 (d) when officer discharged firearm at suspects who ignored command to exit vehicle and instead drove vehicle toward officer).

[5] *Cf. id.* at 517 (holding that officer's alleged violation of mandatory work rule prohibiting use of a firearm occurred during "officer's use of a gun in self-defense or in the execution of an arrest, when circumstances would otherwise authorize the use of a gun").

5

recovering physical evidence from a suspect who was already apprehended, and the evidence of record supports the Board's finding that Mercure's actions violated the APD work rules.[6] Furthermore, we note that regardless of whether or not Mercure was in the process of apprehending the suspect, the work rule only prohibits "neck restraints, carotid artery holds, or other weaponless control techniques *that are not taught or approved by the Department*," and it is undisputed that the neck restraints used by Mercure were not taught or sanctioned by the APD. Indeed, as previously noted, it is undisputed that Mercure learned the neck restraints he used against the suspect during his service in the United States Marine Corps.

Mercure also argues that the relevant work rule conflicts with cases in which we have held that a suspect's Fourth Amendment rights were not violated by an officer's use of neck restraints to recover physical evidence.[7] However, the fact that we have found such maneuvers to be reasonable in certain circumstances for purposes of a Fourth Amendment analysis in the context of a motion to suppress in no way

---

[6] We leave for another day the question of whether the relevant APD work rules conflict with OCGA § 17-4-20 (d) when an officer's alleged violation occurs before a suspect's apprehension has concluded in an arrest.

[7] *See Lewis v. State*, 317 Ga. App. 391, 395 (730 SE2d 757) (2012); *Sanders v. State*, 247 Ga. App. 170, 172 (543 SE2d 452) (2000).

6

limits the APD's ability to provide restrictions for evidence collection through its work rules (that are not otherwise prohibited by federal or state law).[8] And in the case *sub judice*, it is a work rule that Mercure violated, not the Fourth Amendment.

Accordingly, for all the foregoing reasons, we affirm the Board's decision.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[8] *Cf. Morrow v. State*, 311 Ga. App. 323, 327 & n.7 (2) (715 SE2d 744) (2011) (providing citations to cases in which "this Court has recognized greater protection under the Georgia Constitution than under the federal"). Suffice it to say, there is nothing in the text, history, or structure of the Fourth Amendment, or for that matter in the Georgia Constitution, Art. I., Sec. 1, Para. XIII, remotely suggesting that the right of the *people* to be free from unreasonable seizures also includes a concomitant privilege for *state actors* to use certain neck restraints or force (however reasonable) against the very people the right protects. *See District of Columbia v. Heller*, 554 U.S. 570, 579 II (A) (1) (a) (128 SCt 2783, 171 LEd2d 637) (2008) (noting that the Fourth Amendment "unambiguously refer[s] to individual rights, not 'collective' rights, or rights that may be exercised only through participation in some corporate body"); 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES, § 1895, at 748 (Fred B. Rothman & Co. 1991) (1833) ("This provision seems indispensable to the full enjoyment of the rights of personal security, personal liberty, and private property.").